**Hattie APPERWHITE, Appellant,**

v.

**ILLINOIS CENTRAL RAILROAD COMPANY, Appellee.**

**No. 15602.**

United States Court of Appeals
Eighth Circuit.
Jan. 2, 1957.

Charles R. Oldham, St. Louis, Mo. (Fred M. Nelson, St. Louis, Mo., was with him on the brief), for appellant.

William R. Gentry, St. Louis, Mo. (Herbert E. Bryant, Arnot L. Sheppard, St. Louis, Mo., Joseph H. Wright and Herbert J. Deany, Chicago, Ill., were with him on the brief), for appellee.

Before SANBORN, JOHNSEN and WHITTAKER, Circuit Judges.

WHITTAKER, Circuit Judge.

Appellant, Hattie Apperwhite, claiming to have been injured by a sudden, violent and unusual jerk of an Illinois Central train while a passenger thereon in August, 1953, brought this suit against that company for damages. The case was twice tried to a jury. In the first trial the jury was unable to agree, and a mistrial was declared. In the second trial the jury returned a verdict for (defendant) appellee. Judgment accordingly was entered, and she has appealed therefrom.

She urges reversal of the judgment upon two grounds, namely, that the District Court erred (1) in admitting incompetent hearsay evidence, and (2) in erroneously charging the jury upon the law.

Understanding of the points made requires a brief recital of the pertinent facts shown by the record.

On the morning of August 22, 1953, appellant was a passenger in the 9th car (a chair coach) of an Illinois Central train which, soon after entering the city of St. Louis, and while traveling on comparatively level ground at about 10 miles per hour, separated, between the 8th and 9th cars, which released the air and caused the brakes, on the 9th and following cars, to be applied, bringing those cars to a sudden stop.

Her complaint alleged that the railroad was negligent in that it permitted the train to be "jerked suddenly, violently and in a most unusual and extraordinary manner", in making the stop mentioned, causing her to be thrown in and about the car in a violent manner and to sustain injuries, for which she asked damages. The railroad denied that the stop was violent, and denied that appellant was injured thereby.

At the trial appellant testified that the stop was sudden and extremely violent and that she was thereby thrown both forward and backward in her upholstered seat and, in the backward movement, struck her head and her back on "something", and that she was thereby rendered unconscious and seriously injured.

There was evidence that, very soon after the occurrence, an employee of the railroad entered the front end of the 9th car referred to and found all the passengers quiet and composed and no one complained of injury, but he noticed two women, seated one behind the other, and that the one behind (who turned out to be the plaintiff) was leaning forward in her seat and engaged in conversation with the one ahead (who is not identified in the record).

Soon after the occurrence the rear section of the train was moved into the Union Station and all passengers, save these two women, left the train, but they told the porter they had been injured and were unable to leave the train under their own power, and he called the conductor, and when the latter came both these women told him "they were paralyzed". Both women were then carried from the train, and were placed in wheel chairs and were sent, by taxicab, to a hospital. Appellant testified that she has ever since been bedfast and unable to stand or walk without assistance.

The train crew, and several passengers, testified that the stop was not violent, and that appellant could not have been injured thereby.

A physician, specializing in nervous and mental diseases and disorders, put on by appellant, testified that, since the occurrence, he had several times examined appellant, and that she had been "emotionally instable", with a "background for developing conversion reaction", long before this occurrence, and that she had sustained no "organic damage" in this occurrence; that he had "made a diagnosis of conversion neurosis, with associated symptoms of incoordination, one being inability to stand, to keep her balance or to walk, which is clinically known as astasia-abasia"; that "there is nothing physically wrong with this woman"; that "there is no physically wrong condition to any part of the nervous system at all", and that "the reason she does not walk * * * originated in her mind", but that, in his opinion, the incident complained of was the "precipitating cause" of her acute "conversion neurosis."

There was no evidence that appellee had any knowledge or notice, prior to this occurrence, of any infirmity in appellant's health.

Medical testimony adduced by appellee tended to show that appellant had sustained no injury in this occurrence, and that there was nothing wrong with her and that she could walk if she would.

Appellant complains that the District Court erred in permitting the train conductor to testify, over objection on the ground of hearsay, that both the appellant and the other woman, while still in the train at the station in St. Louis, told him, when he went to them at the request of the porter, that "they were paralyzed", because, she argues,

what the other woman said to the conductor was hearsay and, therefore, was incompetent, and also prejudicial to appellant. There is no merit in this point for two reasons: First, the objection was not made until after the question, and two following ones, had been asked and answered, and there was no motion to strike out the challenged answer, and, second, the conductor testified that the two women were in the presence and hearing of each other when the statements were made to him, and, therefore, the statements were not incompetent as hearsay.

■ Appellant's second and final complaint is directed at the charge of the Court, which, of course, must be read as a whole. The Court said to the jury:

"The issues, as I see them, are two: First of all, the issue is, did the train make a sudden, unusual and violent stop? * * * The second issue is whether or not this plaintiff was injured, if the train did make an unusual, sudden and violent stop? * * * (and) If you find and believe from the evidence that the * * * train jerked suddenly and violently * * * and, as a direct result thereof the plaintiff was * * * injured, such facts, * * * are sufficient circumstantial evidence to warrant a finding by you that the defendant * * * was negligent * * * and you may so find, * * * (but) if you are convinced * * that no violent jerk occurred on said occasion, then you should find a verdict in favor of the defendant."

This much of the charge is not questioned, but appellant questions the further charge which told the jury:

"If you find from the evidence that plaintiff's nervous system was in such condition on the occasion in question that even a very slight jolt or jar of the railroad car she was riding in would cause the injuries of which she now complains, and

that such condition of her nervous system was not known to the defendant or defendant's servants operating the train, and if you further find from the evidence that the alleged jerk complained of was not sudden, violent, and unusual, then plaintiff is not entitled to recover * * *."

Appellant's counsel objected to so much of this part of the charge as preceded the second conjunctive "and", upon the ground that such is "not the true law."

In this Court appellant specifically attacks the same part of the charge upon the grounds (1) that it injected an issue which was (a) outside the pleadings, and (b) not supported by evidence, and (2) that appellee is not relieved from the consequences of its negligence upon an ailing person, whether it knew of the ailment or not.

■ Though the pleadings said nothing of appellant's pre-existing emotionally instable condition, the testimony of her physician, received without objection, fully established it as a part of her case and, thus, under Rule 15(b) of Fed. Rules Civ.Proc., 28 U.S.C.A., the pleadings must be deemed amended to include this matter, and, hence, the charge is not subject to the challenge that it was outside the pleadings, nor to the challenge that it was not supported by evidence.

■ As to the challenge that appellee would not be relieved of the consequences of its negligence upon an infirm person, whether it knew of the infirmity or not, it is clear that the questioned charge did not say otherwise, but, on the contrary, it, by the last use of the conjunctive "and" and the words following, required the jury to find, as a predicate to a verdict for defendant, "that the alleged jerk complained of was not sudden, violent, and unusual"—the exact negative of the negligence charged and solely relied on by appellant, and which she was required to establish to the satisfaction of the jury before she could recover. In other words the charge required the jury to

find, as a predicate to a verdict for defendant, that the defendant was not guilty of any negligence.

While this part of the charge may have been a bit confusing—with respect to whether the phrases, "a very slight jolt or jar" and "not violent", express different concepts, or merely different degrees of the same concept—and we do not commend it as a model, it is clear enough that it, in the light of the nature of the evidence respecting appellant's pre-existing instable condition and when read as a part of the whole charge, did not affect the substantial rights of the parties, and, in the light of Rule 61 of Fed.Rules Civ.Proc., we cannot hold that it affords any basis for reversal of the judgment. Moreover, the objection made to the charge, that it was "not the true law", did not comply with Rule 51 of Fed.Rules Civ.Proc., and, in reality, the point is not properly preserved for our review.

We find no substantial error in the rulings, or in the charge of the Court considered as a whole, and the judgment appealed from must be, and it is hereby, affirmed.