**Ralph E. MURPHY, Plaintiff–Appellant Cross–Appellee,**

v.

**GEORGIA–PACIFIC CORPORATION et al., Defendants–Appellees Cross–Appellants.**

**No. 78–2165.**

United States Court of Appeals, Fifth Circuit.

Oct. 23, 1980.

---

1. *Fortress Re, Inc. v. Jefferson Insurance Co. of New York,* 465 F.Supp. 333 (E.D.N.C.1978).

J. Robert Ates, New Orleans, La., for plaintiff–appellant cross–appellee.

Vincent P. Fornias and Paul H. Spaht, Baton Rouge, La., for defendants–appellees cross–appellants.

Before GOLDBERG, GARZA and REAVLEY, Circuit Judges.

GOLDBERG, Circuit Judge:

We journey today into the mysterious realm of Merlin, as we are faced with a valiant attempt at legal sleight of hand. Attorneys for defendants have used all the magic dust and abracadabras they could muster in order to change a paper manufacturing company into a construction company. Not satisfied with this first attempt at prestidigitation, for their next trick defendants tried to make the *Erie* Doctrine vanish into thin air. We find these attempts to

pull a construction company out of a hat and to vaporize *Erie* to be quite clever. However, because we realize that the sleight of hand is ultimately mere illusion, we are not persuaded by the hocus pocus.

### I. *Nothing Up My Sleeve: Setting the Magic Show Stage*

Plaintiff Ralph E. Murphy ("Murphy") was employed by Lafayette Steel Erectors, Inc. ("Lafayette") as a construction worker. In August 1975, Lafayette was under contract to perform new construction work at the Port Hudson, Louisiana paper manufacturing plant of defendant Georgia Pacific Corporation ("Georgia Pacific") as part of a major expansion project undertaken by Georgia Pacific. While working on this project, Murphy was injured when he tried to escape from a spray of "cooking liquor,"[1] a chemical substance which was leaking from then operating paper pulp processing equipment located next to the new construction. Murphy subsequently brought suit in federal district court[2] against Georgia Pacific and its liability insurer, Hartford Accident and Indemnity Company. The jury returned a verdict of $60,000 for plaintiff, and both parties appeal from the judgment entered pursuant to the jury's award.

As appellant, plaintiff argues that the trial judge erred in refusing to allow the jury to consider the decreasing purchasing power of the dollar as part of its assessment of damages. In addition, plaintiff–appellant claims that certain comments made by

the judge in the jury's presence were unduly prejudicial. As cross appellants, defendants argue that their summary judgment motion, based on the claim that Georgia Pacific was the "statutory employer" of Murphy pursuant to Louisiana law and thereby not liable for his injuries in tort,[3] should have been granted by the trial court. In addition, defendants–cross appellants contest the trial court's subsequent finding that as a matter of law Georgia Pacific was not Murphy's statutory employer. Finally, defendants–cross appellants claim that there was insufficient evidence at trial to support the jury's finding of negligence. Because we agree with plaintiff both in his capacity as appellant and in his capacity as cross appellee, we affirm as to liability but reverse as to damages and remand for a new trial solely on that issue.

### II. *Presto Change–o: A Paper Company As a Construction Company*
#### A. *The Louisiana Statutory Employer Standard*

Under Louisiana Workmen's Compensation Law, a principal who employs an independent contractor to perform duties which are part of the principal's "trade, business, or occupation" is the statutory employer of the contractor and its employees,[4] and is thereby not liable in tort for injuries sustained by the statutory employees in performance of these duties. The injured employees' sole remedy is under Workmen's Compensation Law. *See*

---

1. Cooking liquor is a caustic combination of chemicals used to separate the fibres in pieces of wood in order to make pulp. "White liquor" is put into a machine called a "digester," and darkens as the wood is broken down until it finally becomes "black liquor." Murphy was trying to escape a digester leak of black liquor.

2. Jurisdiction was based on diversity of citizenship. 28 U.S.C.A. § 1332, *as amended*, (West Supp. 1980).

3. Defendants–cross appellants note that a "statutory employer" is not liable in tort because workmen's compensation is the proper remedy. *See* pages 864–865 below.

4. La.Rev.Stat.Ann. § 23:1061 (West 1964) provides, in part:

> Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him
> . . . . .

*Blanchard v. Engine & Gas Compressor Services, Inc.*, 613 F.2d 65, 68–69 (5th Cir. 1980) [hereinafter cited as *Blanchard II*]. An often litigated issue is thus whether the work performed by a contractor comes within the ambit of the principal's "trade, business, or occupation." *See, e. g., Blanchard II, supra; Freeman v. Chevron Oil Co.*, 517 F.2d 201 (5th Cir. 1975); *Cole v. Chevron Chemical Co.-Oronite Division*, 477 F.2d 361 (5th Cir.), *cert. denied*, 414 U.S. 858, 94 S.Ct. 67, 38 L.Ed.2d 109 (1973); *Lushute v. Diesi*, 354 So.2d 179 (La.1977); *Reeves v. Louisiana & Arkansas Railway*, 282 So.2d 503 (La.1973); *Doss v. American Ventures, Inc.*, 261 La. 920, 261 So.2d 615 (1972). Perhaps because of vague statutory language, the history of this law's judicial interpretation has been marked by chaos and confusion.[5] *See Blanchard v. Engine & Gas Compressor Services, Inc.*, 575 F.2d 1140 (5th Cir. 1978) [hereinafter cited as *Blanchard I*].

In 1978, this Court noted the confused state of Louisiana law in this area and certified the statutory interpretation question to the Louisiana Supreme Court. *See Blanchard I, supra*, 575 F.2d at 1143–46, *certified*, 590 F.2d 594 (5th Cir. 1979). However, the state court declined certification, apparently feeling that the law needed no clarification, and directed this Court to two Louisiana Supreme Court cases: *Reeves v. Louisiana & Arkansas Railway, supra*, and *Lushute v. Diesi, supra. See Blanchard II, supra*, 613 F.2d at 68. In our attempt to discern the meaning of the Louisiana statutory employer provision, we therefore pay close attention to the words of the Louisiana Supreme Court in *Reeves* and *Lushute*, together with the reading given them by this Court in *Blanchard II*.

*Reeves* involved a situation quite similar to the one at hand. In that case, the Humble Oil Company was found not to be a statutory employer with regard to construction of a new plant unit on the existing plant premises, since "[t]he work being done at the time was not part of its regular business." 282 So.2d at 507. The Court noted that Humble Oil was first and foremost an oil company and concluded that "it was not Humble's business practice to engage in new construction of this type and magnitude," and that the record did not "support a conclusion that this type work was customarily done by Humble or other employers similarly situated." *Id.* at 508.

The question addressed in *Lushute* was whether air conditioner repair was part of a restaurant owner's "trade, business, or occupation." The Court applied the so-called "essential to the business test," and held that because a properly functioning air conditioner "although desirable . . . is not necessary for the operation of a restaurant," the restaurant owner was not the statutory employer of the air conditioner repairman. 354 So.2d at 183. *See Leger v. Amerada Hess Corp.*, 479 F.2d 1250 (5th Cir. 1973) (per curiam).

In light of these two Louisiana Supreme Court cases, this Court in *Blanchard II* defined the Louisiana statutory employer standard as "whether the activity done by the injured employee or his actual immediate employer is part of the usual or customary practice of the principal or others in the same operational business." 613 F.2d at 71. "The activity done" must be defined broadly in terms of the general project on which the injured employees were working. *See Freeman, supra*, 517 F.2d at 201; *Reeves, supra*, 282 So.2d at 508. The question in the case at hand thus becomes whether "new construction of this type and magnitude," *see Reeves, supra*, 282 So.2d at 507, "is part of the usual or customary practice of the principal or others in the same operational business." *See Blanchard II, supra*, 613 F.2d at 71.[6]

---

**5.** For a classic example of the confusion created by the statute, *compare Slocum v. Lamartiniere*, 369 So.2d 201 (La.App.) (Watson, J.) (construction of new store is part of grocer's "trade, business, or occupation"), *writ denied*, 372 So.2d 569 (La.1979) *with Fisher v. Cash Grocery & Sales*, 316 So.2d 872 (La.App.1975) (Watson, J.) (construction of canopy on store is not part of grocer's "trade, business, or occupation").

**6.** *Defendants as cross–appellants direct us to a series of cases decided prior to Reeves and Lushute which emphasized the fact that the*

## B. *Defendants' Motion for Summary Judgment*

Defendants as cross appellants argue that it was error for the trial court to have denied their motion for summary judgment based on the statutory employer defense. They suggest that Georgia Pacific is not only a wood products company, but is a construction company as well. In light of the standard for granting summary judgment, the evidence available to the trial court at the time the summary judgment motion was denied, and the applicable standard of Louisiana statutory employer law discussed above, we disagree and affirm the trial court's decision.

Summary judgment should be granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406 (5th Cir. 1980). "The burden of proof falls on the party seeking summary judgment, and any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party." *Id.* at 410. In considering a motion for summary judgment, a court must examine the entire record before it, *id.*, and draw every reasonable inference in favor of the party opposing the motion. *AT&T v. Delta Communications Corp.*, 590 F.2d 100, 101–02 (5th Cir.), *cert. denied*, 444 U.S. 926, 100 S.Ct. 265, 62 L.Ed.2d 162 (1979).

Defendants as cross appellants argue that their heavy burden as summary judgment movants was sustained in this case. They note that plaintiff submitted no papers in opposition to defendants' affidavits in support of the summary judgment motion, and that therefore the facts in defendants' affidavits must be accepted as true.[7] *Wang v. Lake Maxinhall Estates, Inc.*, 531 F.2d 832 (7th Cir. 1976); *Fitzke v. Shappell*, 468 F.2d 1072 (6th Cir. 1972). Assuming, arguendo, that defendants' analysis is correct, we nevertheless find that at the time the trial court denied summary judgment there was more than ample evidence in the record to create an issue of fact as to whether new construction of the type and magnitude undertaken here, *see Reeves, supra*, 282 So.2d at 507, was part of the "usual or customary practice" of Georgia Pacific. *See Blanchard II, supra*, 613 F.2d at 71. Hence the trial court was correct in denying summary judgment on the statutory employer issue.

The deposition testimony of workers participating in the Georgia Pacific expansion project characterized the work as "major construction" as opposed to "maintenance-type work." Moreover, defendants' own memorandum in support of the summary judgment motion noted that Georgia Pacific did not have the manpower to undertake such a large scale project, and that it was therefore logistically impossible for Georgia Pacific to have completed the plant expansion by itself. In light of these statements, and examining the entire record as it exist-

---

principal was his own general contractor in determining whether the work in question was part of the principal's "trade, business, or occupation." *See, e. g., Cole, supra*, 477 F.2d at 366–67; *Owen v. Kaiser Aluminum & Chemical Corp.*, 417 F.2d 303 (5th Cir. 1969); *Doss, supra*. In light of the Louisiana Supreme Court's highlighting of *Reeves* and *Lushute*, together with the interpretation of these cases in *Blanchard II*, we believe that the emphasis on whether a principal was his own general contractor is misplaced. Rather, the emphasis should be on whether the work in question was "part of the usual or customary practice of the principal or others in the same operational business." *See Blanchard II, supra*, 613 F.2d at 71.

**7.** Plaintiff did oppose defendants' summary judgment motion, but only after the trial judge had made his decision. Record at 72–73, 103–107. Plaintiff explained his tardiness by noting that he was waiting for a key deposition before filing his opposing papers. Furthermore, plaintiff noted that he moved to postpone consideration of the summary judgment motion with defense counsel's blessings, but that the trial court refused to grant the postponement. Record at 70–71. The trial judge apparently had concluded that no opposition by plaintiff was necessary in light of defendants' failure to sustain the burden for granting summary judgment, since he denied defendants' summary judgment motion on the day after he refused to grant plaintiff's requested postponement. Record at 70–73.

ed at the time the summary judgment motion was denied, we find that defendants failed to sustain their burden of showing that no material issues of fact existed with regard to whether Georgia Pacific was the statutory employer of the plaintiff. It could not be said with certainty that the major construction project was part of the usual or customary practice of Georgia Pacific's "trade, business, or occupation," [8] and thus summary judgment was inappropriate.

### C. The Directed Verdict on the Statutory Employer Issue [9]

Defendants as cross appellants also claim as error the trial court's finding that "as a matter of law the [statutory employer] defense is not applicable." Trial transcript at 330. The trial judge based his finding "on the deposition testimony that has already been taken . . . and filed in the record of this case," and concluded that there were "simply not enough factual matters contrary to Lafayette Steel being an independent contractor to permit that question to go to the jury." *Id.* We agree with the trial judge and affirm his decision.

A directed verdict should be granted if, considering all the evidence in the light most favorable to the party against whom the verdict is directed, reasonable men could not reach a contrary verdict.[10] *See Blanchard II, supra,* 613 F.2d at 72; *King v. Ford Motor Co.,* 597 F.2d 436, 439 (5th Cir. 1979); *Boeing Co. v. Shipman,* 411 F.2d 365, 374–75 (5th Cir. 1969) (en banc); · 5A Moore's Federal Practice ¶ 50.02[1] (2d ed. 1980). More specifically, in the case at hand the question is whether reasonable men can disagree as to whether the major construction undertaken by Georgia Pacific was part of its "customary" or "usual" practice in carrying out its "trade, business, or occupation." *See Blanchard II, supra; Reeves, supra.* In considering the evidence in the light most favorable to defendants, we pay particular attention to the depositions of defendant Georgia Pacific's own executives and employees.

The Director of Maintenance and Engineering at Georgia Pacific's Port Hudson Plant testified that the cost of the expansion project on which plaintiff was working when he was injured was $123 million, and that at the height of the project 1500 workers participated in it. On the other hand, the Georgia Pacific Maintenance and Engineering Department at its Port Hudson Plant consisted of about 100 workers, and the largest cited project constructed solely by these workers cost less than $400,000. The Maintenance and Engineering Director conceded that Georgia Pacific was in the wood products business, and noted that "it would not behoove Georgia Pacific to even consider manning [the plant expansion] job and doing that job itself," since the project was too large for the company's capabilities. Finally, he admitted that even a $500,000 construction job would be beyond the scope of Georgia Pacific, and that the paper company had never used its maintenance and engineering crews for any major new construction.[11]

---

8. We agree with the trial court that defendants' statement of what they claimed to be "uncontested facts" in support of their summary judgment motion drew unwarranted conclusions disguised as fact. For example, defendants begged the very issue at the heart of their summary judgment motion by stating as an "uncontested fact" that plaintiff Murphy's work was part of the "trade, business, or occupation of Georgia Pacific Corporation." The trial court was correct in concluding that such a statement was not supported by the record, including defendants' own affidavits and memoranda. Therefore it was not error to refuse to accept such unwarranted conclusions even in light of the fact that plaintiff failed to submit papers opposing defendants' summary judgment motion.

9. Defendants' motion for summary judgment and the directed verdict in favor of plaintiff on the statutory employer issue must each be considered separately, since there was less evidence in the record at the time the summary judgment motion was denied than there was when the directed verdict was granted.

10. For a comparison of directed verdict and summary judgment, including the essential similarities of the standards and theories behind each motion, see 6 Moore's Federal Practice ¶ 56.04[2] (2d ed. 1980) (part 1).

11. The deposition of Georgia Pacific's Port Hudson Division Pulp Mill Superintendent at the time of the plant expansion project echoed the Maintenance and Engineering Director's

In addition, the Industrial Relations Manager of Georgia Pacific's Port Hudson Plant at the time of the expansion project testified that Georgia Pacific had never done any major construction for itself or for any other company, and that he knew of no other paper companies that currently did their own major new construction. Moreover, he admitted that Georgia Pacific was in the paper and wood products business, and that the new construction project was not essential to this operation. Finally, he noted that the expansion project was major new construction beyond the manpower capabilities of the maintenance department.

In light of these depositions, we think it clear that the trial judge was correct in directing a verdict on the statutory employer issue. As in *Reeves, supra*, it was not the principal's business practice "to engage in new construction of this type and magnitude," 282 So.2d at 508, as essentially conceded by the depositions of defendant Georgia Pacific's own executives. Similarly, as in *Reeves*, the record here does not "support a conclusion that this type work was customarily done by [the principal] or other employers similarly situated." *Id.* Moreover, as in *Lushute*, the work in question, "although desirable . . . is not necessary for the operation of [the principal's business]." 354 So.2d at 183. In conclusion, it is clear that the construction project undertaken here is not "part of the usual or customary practice of the principal." *See Blanchard II, supra*, 613 F.2d at 71. Geor-

gia Pacific is a wood products company, and is simply not in the business of major new construction.[12]

### III. *Alakazaam: The Jury's Finding Of Negligence*

■ Defendants' final argument as cross appellants accuses the jury of dabbling in hocus pocus and finding negligence where there was none to be found. Defendants–cross appellants argue that there was insufficient evidence for the jury to find that "cooking liquor" escaped from defendant Georgia Pacific's equipment and sprayed plaintiff, or that Georgia Pacific breached any duty with regard to plaintiff. Assuming, arguendo, that defendants are correct in suggesting that the above factors must be proven as part of plaintiff's negligence case, we nevertheless find that the jury had ample evidence upon which to base its finding of negligence.[13]

Plaintiff's own testimony together with the eyewitness testimony of a fellow employee support the jury's finding that plaintiff injured his knee while attempting to escape from a spray of caustic chemicals. While we agree with defendants–cross appellants that a good amount of contrary evidence was presented, we note that it is not within our authority to question the weight given various pieces of evidence by the jury. Moreover, the testimony of Georgia Pacific employees that cooking liquor is caustic, that, for the liquor leak to have occurred at all, the liquor must have es-

---

comments by noting that Georgia Pacific employees were engaged in maintenance work but not in major new construction. Similarly, the Engineering Field Coordinator at the time of the plant expansion project testified that under normal circumstances the maintenance department would not be expected to do a job of the scope undertaken here.

12. Defendants–cross appellants' emphasis on the fact that individual Georgia Pacific employees had the skills necessary to perform the work done by plaintiff when he was injured is misplaced. The construction project must be considered as a whole, *see Reeves, supra*, 282 So.2d at 508; otherwise, by hiring a "jack of all trades," a principal employer could make *any* activity part of its "trade, business, or occupation."

13. The standard for reviewing sufficiency of the evidence is the same as that for a directed verdict. The applicable test was discussed above at page 867. A directed verdict should only be granted if there is a complete absence of pleading or proof on an issue, or if there are no issues of fact upon which reasonable men could differ. 5A Moore's Federal Practice ⁋ 50.02[1] (2d ed. 1980); *See Blanchard II, supra*, 613 F.2d at 72; *King, supra*, 597 F.2d at 439; *Boeing Co., supra*, 411 F.2d at 374–75. All of the evidence must be considered in the light most favorable to the party against whom the verdict is directed. *Blanchard II, supra*, 613 F.2d at 72; *Boeing Co., supra*, 411 F.2d at 374.

caped from a vessel that was supposed to contain it, and that such escapes are the result of a defect either in equipment or in operation of the equipment, amply supports the jury's findings that defendant breached a duty to plaintiff.[14] The jury was thus presented with sufficient evidence of negligence in light of the above testimony and in light of the record as a whole.[15]

## IV. *Abracadabra: The Mysterious Disappearance Of The* Erie *Doctrine*

■ Apparently ignoring the *Erie* Doctrine [16] and pertinent precedent, the trial court refused to allow testimony of the potential impact of inflation on plaintiff's damage award, and refused to charge the jury with respect to the ever–decreasing purchasing power of the dollar.[17] As an explanation of his decision, the judge noted that the evidence of inflation was simply too speculative, and that

> Under federal law, such evidence is not admissible; and plaintiff claims that it should be admitted under state law, this being a diversity case. And I can only say that if the State Courts of Louisiana apply it, let them apply it. As far as this court is concerned, it's entirely too speculative . . . to be competent evidence.

Trial Transcript at 362. Plaintiff–appellant argues that such a ruling was error, and we agree.

It is clear that under the *Erie* Doctrine, "state law governs the measure of damages, including the admissibility and jury consideration of evidence of inflation." *Weakley v. Fishbach & Moore, Inc.*, 515 F.2d 1260, 1267 (5th Cir. 1975). In Louisiana, it has long been the rule that evidence of inflation is admissible, and that the jury may consider the decreasing purchasing power of the dollar in determining damages. *See Rogers v. Hiram J. Allen Lumber Co.*, 129 La. 900, 57 So. 166 (1912); *Roundtree v. Technical Welding & Fabrication Co.*, 364 So.2d 1325, 1334 (La.App.1978) (4th Cir.), *writ. denied*, 367 So.2d 389 (La.1979); *Johnson v. International Insurance Co.*, 347 So.2d 1279, 1282–84 (La.App.) (1st Cir.), *writ denied*, 350 So.2d 1225 (La.1977); *Blanchard v. Rodrigue*, 340 So.2d 1001, 1005 (La.App.1976) (1st Cir.), *writ denied*, 341 So.2d 1129–30 (La.1977); *Loetzerich v. Texas Pacific–Missouri Pacific Terminal Railroad*, 325 So.2d 626, 628–29 (La.App.) (4th Cir.), *writ denied*, 329 So.2d 469 (La.1976); *Barnett v. Trinity Universal Insurance Co.*, 286 So.2d 770, 778 (La.App.) (2d Cir.), *writ denied*, 287 So.2d 528 (La.1973); *Zagar v. Romero*, 134 So.2d 696, 699 (La.App.1961)

**14.** The court's *res ipsa loquitur* instruction–to which defendants–cross appellants do not object–also lends support to the jury's finding of negligence. The jury was told that they could infer fault on the part of defendant Georgia Pacific if they found (1) that the cooking liquor did in fact escape from Georgia Pacific's equipment, (2) that such leaks do not normally occur without negligence in equipment inspection or maintenance, (3) that the equipment was under the control of Georgia Pacific and that Georgia Pacific was therefore in the best position to explain the cause of the cooking liquor's escape, and (4) that the defendants had failed to give any satisfactory explanation of the leak.

**15.** The jury's special verdict, given in the form of answers to questions by the trial court, evidence the fact that the jury considered the various elements of negligence:

> 1. Was plaintiff's knee injury proximately caused by leakage of caustic materials from the digester on defendant's premises?–Yes.
> 2. If your answer to No. 1 is "Yes," was the leakage of caustic material from the digester

caused by negligence of the defendant, Georgia Pacific?–Yes.
> 3. Was plaintiff, Ralph E. Murphy, guilty of negligence proximately causing his knee injury?–No.
> 4. Was the back injury of which plaintiff complains proximately caused by his prior knee injury?–No.
> 5. What is the total amount of damages suffered by plaintiff, Ralph E. Murphy, as a result of this accident?–$60,000.

Record at 277.

**16.** *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**17.** Plaintiff's proposed jury instruction No. 13, which the court refused to give, requested that the judge charge the jury "that, in weighing any damages that you may see fit to award in this case, you may take into consideration the decreased purchasing power or diminished value of the dollar." Record at 270. Plaintiff made a timely objection to the court's refusal to give the proposed instruction.

(3d Cir.). It was therefore error for the trial judge to refuse to allow the jury to consider inflation,[18] and we reverse and remand for a new trial on damages.[19]

### V. The Trial Court's Not–So–Magic Words

Plaintiff–appellant's final argument is that the trial judge's comments concerning the testimony of plaintiff's economist expert witness were reversible error, even in the absence of an objection at trial, since they were "so prejudicial as to deny a party an opportunity for a fair and impartial trial." Miley v. Delta Marine Drilling Co., 473 F.2d 856, 857–58 (5th Cir.), cert. denied, 414 U.S. 871, 94 S.Ct. 93, 38 L.Ed.2d 89 (1973); see Hoffman v. Sterling Drug, Inc., 485 F.2d 132 (3rd Cir. 1973). Defendants–appellees reply that the judge's comments merely stated the general rule in Louisiana that a plaintiff must prove with certainty every item of damages.[20] See Delta Refrigeration Co. v. Upjohn Co., 432 F.Supp. 124, 128–29 (W.D.La.1977), aff'd mem., 575 F.2d 879 (5th Cir.), cert. denied, 439 U.S. 984, 99 S.Ct. 574, 58 L.Ed.2d 655 (1978); Culpepper v. Natchitoches Parish School Board, 333 So.2d 453 (La.App.), writ denied, 338 So.2d

289 (La.1976). Because we remand for a new trial on damages based upon the failure of the trial judge to allow the jury to consider inflation in its assessment of damages, we need not decide whether the judge's comments were unduly prejudicial. We note, however, that there is always danger of undue prejudice when the trial judge cautions the jury about testimony immediately before the testimony is given. Such comments by the judge may effectively instruct the jurors to disregard what they are about to hear, and may thus constitute reversible error.

### VI. Conclusion: Pay No Attention to the Man Behind the Curtain

Because we find the attempts at legal hocus pocus in this case to be mere illusion, we have determined that a wood products company has not suddenly changed into a construction company and that the Erie Doctrine never really vanished into thin air. Moreover, we have found that the jury based its determination of negligence on ample evidence and did not create something from nothing. Hence, we affirm the trial court's denial of defendants' summary

---

**18.** Defendants–appellees' argument that the federal rule precludes evidence of inflation, see Johnson v. Penrod Drilling Co., 510 F.2d 234 (5th Cir.) (en banc), cert. denied, 423 U.S. 839, 96 S.Ct. 68, 69, 46 L.Ed.2d 58 (1975), is irrelevant since state law clearly applies as to damages in this diversity case. See Weakley, supra, 515 F.2d at 1267.

In addition, defendants–appellees argue that the trial court's failure to allow the jury to consider inflation was harmless if it was error, since the jury by its verdict found no future damages. Defendants–appellees reason that the comparatively small jury verdict must mean that the jury believed the plaintiff to be entitled only to past damages. Such an argument is clearly frivolous. There is nothing to indicate that the jury included no future damages in its award, and we cannot speculate as to what the jury "meant" by its verdict. Refusing to allow the jury to consider the factor of inflation in its assessment of damages was clearly reversible error. By reversing and remanding we are not tampering with the jury's verdict as defendants–appellees suggest, but are rather taking issue with the trial judge's decision as to what evidence should be before the jury.

**19.** By its special verdict the jury found that plaintiff's knee injury was proximately caused by defendant's negligence, but that his back injury was not. See note 15 supra. We therefore, remand only with regard to the damages sustained by plaintiff as a result of his injured knee.

**20.** Immediately prior to the economist's testimony, the trial judge commented:

Ladies and Gentlemen, let me caution you with respect to expert testimony of this nature.

This testimony can be designed to try to speculate as to what the future losses and so forth might be. Bear in mind that the fact that you are hearing evidence on damages does not mean that damages are due. You have to find liability first before damages are due. Secondly, bear in mind, speculative damages are not awardable, and so you will be the judges; this witness will give his opinion as an expert as to what he thinks, but you will be the judges as to what losses are due, if any.

Trial Transcript at 235–36.

judgment motion on the statutory employer defense, and the directed verdict in favor of plaintiff on this issue. We also find that the jury had sufficient evidence upon which to base its finding of negligence. However, we reverse the trial court's decision to disallow jury consideration of inflation, and we remand for a new trial solely on the issue of damages resulting from plaintiff's injured knee.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.