**Duke S. ELLIOTT, Plaintiff-Appellant,**

v.

**LOUISIANA POWER & LIGHT COMPANY, Defendant-Appellee.**

No. 81–3359
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 31, 1982.
Opinion on Rehearing June 28, 1982.
See 679 F.2d 430.

---

Garner & Munoz, New Orleans, La., for plaintiff-appellant.

Monroe & Lemann, Kenneth P. Carter, New Orleans, La., for defendant-appellee.

Before RUBIN, SAM D. JOHNSON and GARWOOD, Circuit Judges.

PER CURIAM:

Plaintiff, Duke S. Elliott, was injured on January 17, 1977, when he fell into a hole on land owned by defendant, Louisiana Power & Light Company (LP&L). LP&L is a Louisiana corporation in the business of generating, transmitting, and distributing electricity.

Until the mid-1970's, LP&L used natural gas as boiler fuel at its power stations. However, as a result of a curtailment in the supply of gas, LP&L decided to alter three of the five boilers at its Nine-Mile Point Steam Electric Station. The alteration involved a conversion of the system in order to allow the boilers to burn oil as boiler fuel instead of natural gas. LP&L contracted with Brown & Root to convert the system. It was during the time Brown & Root was engaged in this conversion that plaintiff, who was employed as an electrician for Brown & Root, injured himself. As a result of his injury, plaintiff brought this suit against LP&L. He claims defendant was negligent. In addition, he claims defendant is strictly liable for his injuries.

Pursuant to a pre-trial order, the trial of this case was divided into several segments. The first segment involved the issue of whether defendant was a "statutory employer" of plaintiff as that term is utilized in the Louisiana Workers' Compensation statutes. La.Rev.Stat. 23:1061 (West 1964). After two days of testimony before a jury, the district court directed a verdict in favor of defendant, holding defendant was plaintiff's statutory employer. Such a finding limited plaintiff to recovery under the state Workers' Compensation statutes and precluded any need to examine the question of defendant's alleged negligence or strict liability.

Plaintiff's motion for a new trial was denied and this appeal followed. This Court reverses the judgment of the district court and remands the case for a new trial.

### I. The Directed Verdict

The major question in the case *sub judice* is whether the directed verdict was erroneously granted. The standard for determining when a directed verdict is proper

was established by this Court in the case of *Boeing Company v. Shipman*, 411 F.2d 365 (5th Cir. 1969). In that case, this Court held:

> On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the nonmover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.

411 F.2d at 374. The question, therefore, is whether there was such substantial evidence in the case *sub judice* to create a question of fact regarding defendant's status as a statutory employer.

The relevant portion of the Louisiana Workers' Compensation statute provides:

> Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor for the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; . . . .

La.Rev.Stat. 23:1061 (West 1964). The case of *Blanchard v. Engine & Gas Compressor Services, Inc.*, 613 F.2d 65 (5th Cir. 1980) clarifies the meaning of this statute by articulating the Louisiana test for statutory employment. "The proper standard . . . is whether the activity done by the injured employee [plaintiff] or his actual immediate employer [Brown & Root] is part of the usual or customary practice of the principal [defendant] or others in the same operational business." *Id.* at 71.[1] Accordingly, the determinative factor is whether there was evidence at trial of such quality and weight that responsible and fair-minded men in the exercise of impartial judgment might reach different conclusions regarding the question of whether the activity of Brown & Root was the type in which LP&L usually or customarily engaged.

LP&L's position at trial was basically that the operations of Brown & Root were the type commonly conducted by LP&L in order to maintain production of electricity. In support of this position, LP&L primarily relied upon a solitary witness to produce two types of evidence. The first type of evidence was testimony illustrating the conversion work was essential to the business of LP&L. Second, LP&L provided testimony that its own employees were capable of doing this type of work.

This Court recognizes there is significant evidence that LP&L had employees capable of doing the type of work that was being performed by plaintiff and its employer. There is also strong evidence this type of work was necessary for the continued operation of LP&L. However, the fact LP&L had people with skill to do the work does not make the work part of the usual or customary practice of LP&L or others in the same operational business. In addition, the fact this conversion project was essential to the business of LP&L does not make it part of its usual or customary practice. When this evidence is viewed in the light and with all reasonable inferences most favorable to plaintiff, the facts and inferences

---

1. Defendants, such as defendant LP&L, have the burden of proving such matters. *Reeves v. Louisiana & Arkansas Railway Company*, 282 So.2d 503, 507 (La.1973); *John Hancock Mutual Life Insurance Co. v. Dutton*, 585 F.2d 1289, 1296 (5th Cir. 1978).

do not point so strongly and overwhelmingly in favor of LP&L that this Court believes reasonable people could not arrive at a contrary verdict.[2]

In addition, plaintiff refers the Court to testimony that the necessity of converting from natural gas to the use of oil involved more than mere maintenance of LP&L's facilities. This conversion involved major new construction. Indeed, the evidence demonstrates it involved new construction that would extend over several years and cost millions of dollars. While defendant's witness said defendant spent millions *each year* on maintenance, that is something altogether different from millions on a single so-called "maintenance" project. Further, when defendant's witness was asked to provide evidence of similar work undertaken by LP&L, he could point only to one isolated project in 1967 that lasted approximately six months and required far fewer of LP&L's employees than the number being used by Brown & Root.[3]

There exists, at the very least, a controversy regarding whether the conversion project was similar to the general maintenance in which LP&L was ordinarily engaged or whether it was a completely different type of project involving many more hours and employees than usual. Even assuming LP&L had the capability for internally undertaking a project the size of this conversion, there is the additional question of whether doing so would constitute a practice in which LP&L usually or customarily engages.[4]

This Court does not determine whether LP&L is, in fact, incapable of this type of work. Additionally, it does not decide whether LP&L has done similar work. It does determine, however, that there is substantial evidence to raise a question of fact regarding whether the activity done by plaintiff or Brown & Root was part of the usual or customary practice of Louisiana Power & Light or others in the same operational business. Since it is the function of the jury as the traditional finder of the facts, and not the court, to weigh conflicting evidence and inferences and determine the credibility of witnesses, this Court determines the district court erred by granting a directed verdict.

II. *Denial of Request for Plans and Specifications*

██ Plaintiff also claims error on the part of the district court for its rejection of plaintiff's request to obtain the plans and specifications of both the Nine-Mile Point Steam Electric Station and the relevant construction involved. The district court rejected plaintiff's request because the plans and specifications were not listed in the final pre-trial order as documents to be utilized at trial.

In order to prevail on this point, plaintiff must prove the district court's determination was an abuse of discretion.[5] Fed.R.

2. In fact, the district court stated that LP&L would have been capable of doing this work only "if it had elected to shift [its employees] from their *customary* work to the job of doing the conversion." (emphasis added). This finding illustrates the very type of fact question that is raised by the evidence.

3. There is evidence the number of Brown & Root employees customarily on this type job at any one time was greater than the number of all LP&L employees assigned to the Nine Mile Point plant. Additionally, LP&L's witness testified Brown & 'Root was hired because LP&L "did not have the manpower, and had no plans to supply the manpower to do [the conversion] with [their] own forces."

It should be noted the witness did refer to a 1961 project internally performed by LP&L.

This project evidently was smaller than the 1967 project.

4. LP&L's witness testified that, if LP&L had attempted to do the job itself, the project certainly would have diverted it from the business in which it is customarily and usually engaged, at least for a time. In addition, plaintiff—who had worked for independent contractors on other utility jobs and had been employed by electric utilities—testified without objection that "[t]o my knowledge none of the utility companies do [similar projects] theirself."

5. Of course, the question of whether the district court abused its discretion by denying plaintiff's request for plans and specifications is moot, since this court remands the case for a new trial and a new pre-trial order will be

Civ.Pro. 16 controls pre-trial procedure and provides the district court with broad discretion regarding the formation of the issues for trial. The rule in this Circuit is that "[t]he trial judge must be permitted wide latitude in guiding a case through its preparatory stages. His decision as to the extent that pre-trial activity should prevent the introduction of otherwise competent and relevant testimony at trial must not be disturbed unless it is demonstrated that he has clearly abused the broad discretion vested in him by Rule 16." *Davis v. Duplantis*, 448 F.2d 918, 921 (5th Cir. 1971). *See also Clary v. Ocean Drilling and Exploration Co.*, 609 F.2d 1120 (5th Cir. 1980).

Plaintiff concedes that, at best, it "did not precisely identify this document [the plans and specifications] in its pre-trial order." Plaintiff claims, however, it did request "any and all contracts between Brown & Root, Inc., and Louisiana Power & Light Co. in connection with the suit sued upon herein." The contract, plaintiff argues, incorporated the plans and specifications.

Review of the contract reveals that it mentions and discusses the plans and specifications. It does not appear to incorporate them, however. Indeed, article 18 of the contract, which is entitled "Complete Agreement," states, "The documents comprising this Contract shall consist of" the contract document, the general conditions, and the project outline. There is no mention of the plans and specifications in the contract's complete agreement section.

The rule in this Circuit is that decisions concerning variance from the pre-trial order are "within the sound discretion of the trial judge as interpreter of the pre-trial order," *Burdis v. Texas & Pacific Railway Co.*, 569 F.2d 320, 323 (5th Cir. 1978) *citing Bornmann v. Great Southwest General Hospital, Inc.*, 453 F.2d 616, 625 (5th Cir. 1971). This Court determines the district court's decision relating to the introduction of the plans and specifications was not an abuse of discretion.

utilized. It is important, however, for this Court to address plaintiff's claim for the sake

III. *Conclusion*

This Court determines that the district court erred by directing a verdict on the issue of whether LP&L was a statutory employer of plaintiff. It also determines that the district court did not err in rejecting plaintiff's request for the plans and specifications of LP&L's plant and the relevant construction. The judgment of the district court is reversed, and the case is remanded for a new trial.

REVERSED AND REMANDED.

of clarity and to avoid further confusion upon remand.