Larry W. HALL, Plaintiff-Appellant,

v.

CROWN ZELLERBACH CORPORATION, Defendant-Appellee.

No. 82–3682
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Sept. 26, 1983.

---

S. Michael Cashio, Jr., Kenner, La., for plaintiff-appellant.

R. Bradley Lewis and Richard F. Knight, Bogalusa, La., for defendant-appellee.

Before GEE, POLITZ and JOHNSON, Circuit Judges.

PER CURIAM:

Under Louisiana's workmen's compensation statute, an employee of an independent contractor may recover compensation benefits from the principal employer on a job if the employee is injured while performing work which is part of the principal's "trade, business, or occupation." LSA–RS 23:1061 (West 1964).[1] This statutory liability carries with it its own limita-

---

1. LSA–RS 23:1061 states:

   **3. § 1061. Principal contractors; liability**

   Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.

   Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor.

tion: the principal employer is shielded from tort liability. LSA–RS 23:1032 (West Supp.1983).[2] Whether a statutory relationship exists is a question of fact to be determined by the totality of the circumstances surrounding each case. *Penton v. Crown Zellerbach Corporation,* 699 F.2d 737, 741 (5th Cir.1983), *quoting Ortego v. Union Oil Company of California,* 667 F.2d 1241 (5th Cir.1983) (per curiam).

In the instant diversity action, Larry Hall, a painter injured in the course of his work, appeals from a jury finding that such a statutory employment relationship precludes his tort claim against Crown Zellerbach Corporation. Hall contends that the evidence was insufficient for the jury to conclude that a statutory relationship existed, and that the court below erred in its instruction to the jury on the statutory employer defense. Unfortunately, Hall's counsel failed properly to preserve these issues for our review. We are therefore forced to consider these questions under the stringent "plain error" standard. Applying this strict test to a murky record, we cannot find that the jury, or the court, committed "plain error," or that a miscarriage of justice would result were the verdict allowed to stand.

### I.

In 1976, Crown Zellerbach Corporation (Crown) commenced a four-year, multi-million dollar "modernization" project to expand and upgrade its paper mill in Bogalusa, Louisiana. Most of the work was contracted out; however, Crown used its own employees to perform various tasks connected with the project as well as retaining control by designating itself the general contractor and appointing a special project manager, Robert Martin, to oversee the project.

Part of the modernization program included the installation of two high density tanks and a diffuser washer system. Crown contracted with Kamyr, Inc. to erect those steel structures; the contract called for Kamyr to erect them completely primed but without a finish coat of paint. For budget reasons, the priming was later eliminated from the Crown-Kamyr contract, and the tanks were erected unprimed. Subsequently, Crown contracted with Belle Chasse Contractors, Inc. to prime and paint the tanks in question. Hall, a painter's helper employed by Belle Chasse, was engaged in preparation for priming the steel pursuant to this contract when he was injured.

Hall sought recovery from Crown under Louisiana tort law on theories of negligence and strict liability. At the conclusion of a three-day trial, Crown moved for summary judgment on the ground that LSA–RS 23:1061 rendered it immune from tort liability because it was Hall's "statutory employer." The district court denied the motion and submitted the question of the existence of a statutory employment relationship to the jury, which found for Crown on this determinative issue.

### II.

On appeal, Hall asserts that the evidence was insufficient for the jury to reach its conclusion and that the trial court erred in its instruction to the jury on the "statutory employer" defense. However, neither of these issues are properly before us, since Hall's counsel failed to preserve them for appellate review.

---

**2.** LSA–RS 23:1032 provides in relevant part:

5. **§ 1032. Exclusiveness of rights and remedies; employer's liability of prosecution under other laws**

The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the word "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.

### Sufficiency of the Evidence

It is the law in this circuit, as generally elsewhere, that the sufficiency of the evidence supporting a jury verdict is not reviewable on appeal, ... unless a motion for directed verdict was made at the close of all the evidence by the party seeking that review.

*Quinn v. Southwest Wood Products, Inc.,* 597 F.2d 1018, 1024 (5th Cir.1979). *See Coughlin v. Capitol Cement Co.,* 571 F.2d 290, 297 (5th Cir.1978), and cases cited therein. As this court has previously explained,[3] the rule is designed to prevent litigants from gambling that the jury will rule in their favor, while reserving the option of challenging the sufficiency of the evidence on appeal should the jury rule against them.

When a claimed deficiency in the evidence is called to the attention of the trial judge and of counsel before the jury has commenced deliberation, counsel still may do whatever can be done to mend his case. But if the court and counsel learn of such a claim for the first time after verdict, both are ambushed and nothing can be done except by way of a complete new trial. It is contrary to the spirit of our procedures to permit counsel to be sandbagged by such tactics or the trial court to be so put in error.

*Quinn,* 597 F.2d at 1025.

■ This case presents a core example of a fatally belated challenge to the evidence. Plaintiff did not move for a directed verdict at the close of the evidence,[4] nor indeed did plaintiff assert any deficiency in the evidence by way of a motion for relief prior to the jury's commencement of its deliberations.[5] Where plaintiff has thus failed to preserve the issue of sufficiency of the evidence for appellate review,

"our inquiry is limited to whether there was any evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was committed which, if not noticed, would result in a manifest miscarriage of justice."

*Coughlin,* 571 F.2d at 297, *citing American Lease Plans, Inc. v. Houghton Construction Co.,* 492 F.2d 34, 35 (5th Cir.1974); *Little v. Bankers Life & Casualty Co.,* 426 F.2d at 511 (5th Cir.1970). *See also Patton v. Archer,* 590 F.2d 1319, 1323 (5th Cir.1979); *House of Koscot Development Corp. v. American Line Cosmetics, Inc.,* 468 F.2d 64, 67, 68 nn. 4, 5 (5th Cir.1972); *Ramada Development Co. v. Rauch,* 644 F.2d 1097, 1102–03 (5th Cir.1981).

Prior to reviewing the record for some evidence of a statutory employment relationship, we take a moment to specify what evidence we seek. The standard for determining the existence of a statutory employment relationship was established by this court in *Blanchard v. Engine & Gas Compressor Services, Inc.,* 613 F.2d 65, 69 (5th Cir.1980) (*Blanchard II*). In that seminal case [6] we stated:

The proper standard, as we see it, is whether the activity done by the injured employee or his actual immediate employer is part of the usual or customary prac-

---

**3.** *See, e.g., Quinn,* 597 F.2d at 1024–25; *Coughlin,* 571 F.2d at 297; *Little v. Bankers Life & Casualty Co.,* 426 F.2d 509, 511 (5th Cir.1970) ("Similarly, the litigant who has not moved for a directed verdict in the trial court must have been of the view that the evidence made a case for the jury; he should not be permitted on appeal to impute error to the trial judge for sharing that view."). *See generally* C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2536.

**4.** Also, plaintiff did not move for a judgment notwithstanding the verdict, or for a new trial, after the jury had rendered its verdict.

**5.** *Compare Quinn,* 597 F.2d at 1025–26 (where defendant formally moved for a directed verdict, objecting to the submission of a general interrogatory on specific grounds of evidentiary insufficiency, at a time when the jury had formally retired but before it had been permitted to begin its deliberations, the defendant had preserved the sufficiency of the evidence for appellate review).

**6.** In *Blanchard II,* this circuit engaged in an in-depth analysis of Louisiana precedent, endeavoring to harmonize conflicting interpretations of LSA–RS 23:1061 and define a flexible test appropriate to present industrial practices. The Fifth Circuit was forced to undertake this task, properly that of the Louisiana Supreme Court, by the refusal of that court to respond to our certification of the issue to it.

tice of the principal or others in the same operational business.

More specifically, we should first consider whether the particular principal involved in the case customarily does the type of work performed by the contractor and whether the contractor's work is an integral part of the work customarily performed by the principal. If either of these situations exist, then there is a statutory employment relationship, and the inquiry ends there. If, however, the principal does not normally engage in this type of activity, or if it is not normally a part of his practices, then it is necessary to determine if others engaged in businesses similar to that of the principal customarily do this type of work or if it is an integral part of their businesses. If either of these inquiries yields an affirmative answer, then the general custom of the trade will control to make the relationship between the principal in question and his contractors' employees that of statutory employer and employee.

In applying this test, it is proper to consider all facts which would or would not suggest a statutory employment relationship. Whether the work is essential to the business of the principal or others engaged in similar businesses, may be one such fact.

Another fact to consider is whether the principal, or others engaged in like operational activities, normally subcontract out the work *or whether they have employees who can, and customarily do, do the work.* 613 F.2d at 71 (emphasis added). Cases since *Blanchard II* in both state and federal courts have affirmed the analysis we performed in that case and further clarified the standard we outlined there. *See, e.g., Penton v. Crown Zellerbach Corporation,* 699 F.2d 737 (5th Cir.1983); *Williams v. Shell Oil Co.,* 677 F.2d 506 (5th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 570, 74 L.Ed.2d 933 (1982); *Darville v. Texaco,* 674 F.2d 443 (5th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 298, 74 L.Ed.2d 280 (1982); *Barrios v. Engine & Compressor Services, Inc.,* 669 F.2d 350 (5th Cir.1982); *Murphy v. Georgia Pacific Corp.,* 628 F.2d 862 (5th Cir.1980); *see also Melancon v. Tassin Am-*

*phibious Equipment Corp.,* 427 So.2d 932, 935 (La.App.1983) (approving *Blanchard II* analysis and test).

This case requires that we examine the precise definition and significance that our post-*Blanchard II* cases, and those of the Louisiana courts, have given to the issue of whether the work in question is usually performed by the principal's own employees. It is clear that "the determination of whether a principal is the statutory employer of a contractor's employee is not dependent upon the principal's having employees performing the same task." *Guinn v. Progress Drilling, Inc.,* 398 So.2d 128, 130, (La.App.1981). *See Murphy v. Georgia-Pacific Corp.,* 628 F.2d at 868, n. 12 ("Defendant's ... emphasis on the fact the Georgia-Pacific employees had the skills necessary to perform the work done by plaintiff when he was injured is misplaced. The construction project must be considered as a whole, ... otherwise, by hiring 'jacks of all trades,' a principal employer would make any activity part of its 'trade, business or occupation'." (citations omitted)); *Penton,* 699 F.2d at 744 ("The argument that Crown employed persons who could have performed appellant's particular task, without more, does little more than muddy the waters."); *Williams v. Shell Oil,* 677 F.2d at 509, n. 3; *Elliott v. Louisiana Power & Light Co.,* 671 F.2d 865, 867 (5th Cir.1982); *Blanchard II* at 71 (fact that principal does not have his own employees to do duties is not determinative), *citing Barnes v. Sun Oil Co.,* 362 So.2d 761 (La.1978).

The cases indicate that while it is not determinative whether the employee performs *duties* (e.g. painting, welding, etc.) which the principal's employees also perform, it is relevant to a *Blanchard II* inquiry whether the *project* on which the employee in question was injured was the sort of project which the principal usually employed his own employees to perform (e.g. new construction or routine repair). As this court put the distinction recently in *Penton v. Crown Zellerbach, supra,* a case which like this one involved an employee of an independent contractor injured while working on Crown's Bogalusa moderniza-

tion: "In this connection, focus is directed to the relationship between the independent contractor and the principal employer rather than the specific duties of the injured employee." 699 F.2d at 741. *See id.* at 744 (relevant issue is "whether the magnitude and type of Crown's update and modification of the Bogalusa plant facility was part of its usual and customary practice"; "full airing of (Crown's) day-to-day operations" needed for resolution of issue); *Murphy,* 628 F.2d at 867–68 (upholding directed verdict denying existence of statutory relationship where plaintiff injured during major expansion of paper mill and principal's employees had never been used on major new construction); *Barrios v. Engine & Gas Compressor Services, Inc.,* 669 F.2d at 354–55 (upholding district court finding of statutory employer relationship where principal's employees "regularly performed the same repairs and maintenance work on compressor engines that plaintiff was doing at time of accident," and "it was essential to [principal] to keep compressors in top working order at all times"); *Darville v. Texaco,* 674 F.2d at 444–46 (affirming summary judgment finding statutory employment relationship where plaintiff's vacuuming of oil separators necessary to operation of principal's plant; fact that principal always contracted out vacuuming at this plant not enough to raise triable issue of fact).

■ In the instant case, the evidence as to the existence of a statutory relationship focused almost exclusively on the fact that Crown employed persons who could and did do painting associated with other parts of the modernization project. Robert Martin, formerly project manager of the modernization project, testified that Crown employed a regular crew of "facility mechanics"[7] who put the finishing coat of paint on other elements of the modernization project. Martin also testified that Crown's usual course of proceeding, at its mills other than the Bogalusa mill, was to have Crown employees paint new equipment installed by Crown[8] and do maintenance work. If, however, Crown lacked the manpower for the job, Crown would hire independent contractors.

To repeat, the posture of this case precludes us from reviewing the weight or adequacy of this evidence. Under the applicable "any evidence" standard, we cannot find that the record is totally devoid of any evidence of a statutory relationship.

### The Instruction to the Jury

■ Hall asserts that the trial court erred in its instruction to the jury on the statutory employer defense. Unfortunately, Hall's counsel again failed properly to preserve this issue for our review. Although counsel for plaintiff timely objected to the court's instruction, he did not adequately specify the grounds for his objection.[9]

We cannot overlook this failure to comply with the requirement of Fed.R.Civ.Proc. 51 that any objection to a jury instruction "state distinctly the ... grounds of the objection."

Rule 51 promotes judicial economy and integrity by serving a dual purpose. Compliance with the Rule provides an opportunity for the trial judge to correct errors while it eases the burden on appellate courts by reducing the potential number of reviewable court rulings.

---

7. These employees also did carpentry work, brick work, and concrete work in addition to painting.

8. The high density tanks, which were new construction installed by Kamyr, would not fall into this category of equipment generally painted by Crown employees.

9. Counsel objected to the instructions on the ground that "we don't feel that is the state of the law of the statutory defense." Such a general objection does not meet the specificity requirement of Rule 51. *See Apperwhite v. Illinois Cent. R. Co.,* 239 F.2d 306 (8th Cir.1957) (objection that charge "not the true law" does not meet specificity requirement); *see also Gorsalitz v. Olin Mathieson Chemical Corp.,* 429 F.2d 1033, 1037, 1040 (5th Cir.1970), *cert. denied,* 407 U.S. 921, 92 S.Ct. 2463, 32 L.Ed.2d 807 (1972).

McKinnon v. Skil Corp., 638 F.2d 270 (1st Cir.1981). See Pruett v. Marshall, 283 F.2d 436, 441 (5th Cir.1960). Plaintiff's objection did not provide adequate guidance for the trial court to revise its instructions since the objection did not indicate what conflict plaintiff saw between the instruction and the applicable law.[10] We are aware that

> [t]he Appellate Court ... may in its discretion consider grounds of error in spite of a failure to object below where it is apparent on the face of the record that there was plain error or a miscarriage of justice.

Pruett, 283 F.2d at 441, n. 3 (citations omitted).[11] This is not such a case.[12]

■ This case does not present a model of proof of the statutory employer defense. Our review is, however, strictly circumscribed by the posture of this appeal. We cannot find plain error on this record.

AFFIRMED.

---

**10.** We note that plaintiff did not specifically object to the trial court's failure to give plaintiff's requested instruction on the statutory employer defense. Thus, we decline to attempt to divine plaintiff's true objection by comparing plaintiff's suggested charge with the one given by the trial court. See C. Wright & A. Miller, Federal Practice & Procedure: Civil § 2554, text accompanying notes 68–70 (request for instruction need not be objection to charge as given).

**11.** See Rauch, 644 F.2d at 1102; Bissett v. Ply-Gem Industries, Inc., 533 F.2d 142 (5th Cir. 1976); Wirtz v. International Harvester Co., 331 F.2d 462 (5th Cir.1964).

**12.** Even if Hall had properly presented this issue for our review, we would find no error in the instruction.

In the review of jury instructions, a challenged instruction should not be considered in isolation but rather as part of an integrated whole. If, viewed in that light, the jury instructions are comprehensive, balanced, fundamentally accurate, and not likely to confuse or mislead the jury, the charge will be deemed adequate. Vezina v. Theriot Marine Service, Inc., 554 F.2d 654 (5th Cir.1977). See also United States v. Gray, 626 F.2d 494 (5th Cir.1980); and Crador v. Louisiana Dept. of Highways, 625 F.2d 1227 (5th Cir.1980); and Hlodan v. Ohio Barge Line, Inc., 611 F.2d 71 (5th Cir.1980). Scheib v. Williams-McWilliams Co., Inc., 628 F.2d 509 (5th Cir.1980). The district court's instruction on the statutory employer defense was clear and comprehensive; it carefully tracked the standard enunciated in Blanchard II.