**Dane Elliott BARRIOS,**
**Plaintiff-Appellant,**

v.

**ENGINE & GAS COMPRESSOR SERVICES, INC. and Gulf Oil Corporation,**
**Defendants-Appellees.**

**No. 81–3194**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

March 5, 1982.

John F. McKay, Baton Rouge, La., for plaintiff-appellant.

Alan A. Zaunbrecher, New Orleans, La., for Engine & Gas Compressor Services, Inc.

Edward J. Koehl, New Orleans, La., for Gulf Oil Corp.

Before GEE, GARZA and TATE, Circuit Judges.

PER CURIAM:

The appellant, Dane E. Barrios, instituted this suit pursuant to the Jones Act and general maritime law against Engine and Gas Compressor Services ("Engine & Gas") and Gulf Oil Corporation ("Gulf") for injuries sustained while he was servicing a compressor station owned by Gulf at its Quarantine Bay station, a fixed platform located within Louisiana's territorial waters. In a supplemental and amended complaint, Barrios instituted a tort action in diversity against Gulf pursuant to L.S.A.–C.C. 2315–2322.

Barrios was employed by Engine & Gas as a compressor engine mechanic and foreman. Engine & Gas had contracted with Gulf to provide repair and maintenance service on Gulf's compressor stations. Barrios worked on Gulf compressor engines at three locations in the East Delta area—Quarantine Bay, Black Bay, and Grand Bay. The accident that gives rise to this suit occurred on the Quarantine Bay station, a permanently fixed platform built on pilings. The Black Bay and Grand Bay station, on which plaintiff occasionally performed compressor maintenance and repair work, were constructed on land and floated out to their bay locations, where they were then fastened to the floor of the bay with clusters of wooden and steel pilings. Barrios was transported from station to station by crew boats. He was injured on March 21, 1977, while repairing a compressor on the Quarantine Bay fixed platform. He attempted to remove a plug from a compressor flowline that had not been completely depressurized and was struck in the head by an unknown object when the pressure was unexpectedly released.

In order to recover under the Jones Act, Barrios must have seaman status. He claims that by virtue of his work aboard the other compressor stations, which had been floated to their locations, and because he performed various tasks on the crewboats that transported him to his work sites, he had seaman status. After considerable discovery, the defendants filed a motion for summary judgment on the basis that Barrios lacked seaman's status and that the diversity claim against Gulf was barred because of the lack of complete diversity or, alternatively, that under the Louisiana Workmen's Compensation Act Gulf was the "statutory employer" of Barrios. Following a hearing on the motion, the district court granted appellees' motion and dismissed the suit, stating that appellant was not a Jones Act seaman. In addition, the district court took jurisdiction over the state claim and determined that Gulf was Barrios' statutory employer, which barred the tort action.

### Seaman Status

Resolution of this issue lies in the test as to the definition of a "seaman." In order to qualify for coverage under the Jones Act, a worker claiming seaman status must satisfy three criteria:

(1) he must have a more or less permanent connection with (2) a vessel in navigation and (3) the capacity in which he is employed or the duties which he performs must contribute to the function of the vessel, the accomplishment of its mission or its operation or welfare in terms of its maintenance during its movement or during anchorage for its future trips.

*Watkins v. Pentzien, Inc.*, 660 F.2d 604, 606 (5th Cir. 1981). Whether a person is a seaman under these criteria is normally a question for the jury. *Id.* The issue may be resolved by summary judgment, however, where the undisputed material facts establish as a matter of law that an individual is not a Jones Act seaman. *Id.*

Here a resolution of this issue is predicated upon a determination of whether (a) the compressor stations upon which Barrios was employed were vessels in navigation and (b) his performance of any tasks on the crewboat that transported him between stations "contributed to the function of the vessel, the accomplishment of its mission or its operation or welfare ...."

In *Blanchard v. Engine & Gas Compressor Services, Inc.*, 575 F.2d 1140 (5th Cir. 1978), this court considered a claim involving Gulf's compressor stations, similar to those described here, and concluded that the buildings comprising the compressor stations were not Jones Act vessels. There the court affirmed the district court's summary judgment on the seaman's claim and stated the applicable standard for determining whether a special-purpose craft is a vessel is consideration of "the purpose for which the craft is constructed and the business in which it is engaged." *Id.* at 1142.

After applying this analysis to the compressor stations in *Blanchard*, the court concluded that the "purpose and business" of the compressor buildings mounted on submersible barges had nothing to do with being Jones Act vessels. *Id.* at 1143. The court noted that Gulf did not intend to move these structures on a regular basis, as is done with submersible drilling rigs. "In sum, we believe, '[m]ere flotation on water does not constitute a structure a vessel.'" *Id.* at 1143.

In this case, the manner of attachment of these compressor stations in the gulf is similar to those in *Blanchard*. The station on which Barrios was injured was built on location and secured by permanent pilings. The other two compressor stations here were built on inland shipyards, floated to the desired locations, and sunk on a previously laid shell bed. Several clusters of pilings were then driven around the submerged barges to hold them in place. No navigational equipment was maintained aboard the sunken barges.

There is no showing that the stations at Grand Bay or Black Bay were ever moved, despite Barrios' conclusional allegation that he thought that they were scheduled to be moved, nor is there any showing that they were intended for movement on a regular basis. Even if one of the compressor stations had actually been moved, Barrios could not prevail on this issue. In *Blanchard*, one of the compressor stations had been moved; however, the court noted that no one intended for it to move on a regular basis, judging from the manner in which it was secured in position. *Id.* at 1143. It is well established that fixed platforms like the ones described here are not vessels, *see Callahan v. Fluor Ocean Services, Inc.*, 482 F.2d 1350, 1351 (5th Cir. 1973), and therefore Barrios cannot recover under the general maritime law for his work on the compression stations.

Barrios further argues that if the compressor stations are not Jones Act "vessels," he was nonetheless a seaman because he regularly rode from platform to platform on crewboats and "performed a substantial amount of work" on the crewboats that "contributed to the function of the vessels." However, there is no showing that Barrios' work aboard them was other than transitory and incidental to his employment as a mechanic on the compressor stations.

"[T]he relationship between the individual and an identifiable vessel or group of vessels must be substantial in point and time, not spasmodic." *Guidry v. Continental Oil*, 640 F.2d 523, 529 (5th Cir. 1981); *see also Callahan*, 482 F.2d at 1352 (affirming the district court's summary judgment denying seaman's status where Callahan was only a passenger on the crewboat twice daily). "Evidence of 'sporadic contacts for brief periods of time' with water-borne vessels is insufficient to support a jury finding of seaman status." *Holland v. Allied Structural Steel Co.*, 539 F.2d 476, 484 (5th Cir. 1976), *cert. denied*, 429 U.S. 1105, 97 S.Ct. 1136, 51 L.Ed.2d 557 (1977). To perform a substantial part of his work aboard a vessel, it must be shown that he performed a significant part of his work aboard the vessel with at least some degree of regularity and continuity. *Id.* Thus, a "'claimant [must] have more than a transitory connection' with a vessel or a specific group of vessels." *Ardoin v. J. Ray McDermott & Co.*, 641 F.2d 277, 281 (5th Cir. 1981).

An examination of the pretrial record indicates that Barrios rode the crewboats for two hours per day at most and that his sole purpose in riding them was to be transported to work sites on the compressor stations. He was never quartered on these

boats or required to remain on the vessel for a period longer than the time necessary for transportation to the various compressor stations. Barrios performed no maintenance or repair work on the crewboats. Nor was he specifically assigned any tasks to aid in the crewboats' navigation. Such tasks as he did perform were random and voluntary.

Barrios, in his deposition, admits that he was on the crewboat as a passenger. He was, by his own admission, just "getting paid to ride." There is no evidence that he performed a substantial amount of his work aboard the crewboats. His employment as a mechanic on the compressor stations did not contribute to the function of the crewboats or to the welfare of the vessels during movement. Therefore, Barrios does not have the requisite seaman status for recovery under the Jones Act and general maritime law.

### Diversity Jurisdiction

■■ Plaintiff filed suit under the Jones Act and general maritime law against Engine & Gas and Gulf and later amended his complaint to add a diversity of citizenship claim, 28 U.S.C. § 1332, against Gulf alone. Appellees claim that the district court lacked subject-matter jurisdiction to hear the state claim because there was not complete diversity. It is undisputed that Barrios is a Louisiana resident. It is further undisputed that Engine & Gas is a Louisiana corporation and that Gulf is a foreign corporation. As such, the complete diversity rule of *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), has not been satisfied. However, the district court had pendent jurisdiction over the state law claim, and no independent ground for jurisdiction of that claim was needed. *See United ed Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Broad v. Rockwell International Corp.*, 642 F.2d 929, 938 n.8 (5th Cir. 1981). Because the state and federal claims in this case derive from a "common nucleus of operative fact," the district court had discretion to hear the pendent state claim. *Gibbs, supra* 383 U.S.

at 725–26, 86 S.Ct. at 1138–39. We thus turn our attention to Barrios' state tort claim against Gulf.

### State Tort Claim

■ The district court found that Barrios could not sue Gulf in tort because Gulf was his "statutory employer." The Louisiana Workmen's Compensation Act, L.S.A.–R.S. 23:1021, et seq., provides that a principal for whom a contractor is performing work that is part of the principal's "trade, business or occupation" shall be liable for workmen's compensation benefits to the contractor's employees. L.S.A.–R.S. 23:1061. As a *quid pro quo* for the compensation responsibility of the principal, the contractor's employee is limited to a compensation remedy and may not sue the principal in tort. L.S.A.–R.S. 23:1032. When this relationship exists, the principal is commonly referred to as the "statutory employer" and the contractor's employee as the "statutory employee."

This court has recently conducted a thorough examination of Louisiana law and pronounced the proper legal standards to be applied when determining whether the principal is a statutory employer. In *Blanchard v. Engine & Gas Compressor Services, Inc.*, 613 F.2d 65, 71 (5th Cir. 1980), this court rejected the strict application of the "essential to business" test articulated in *Thibodaux v. Sun Oil Co.*, 40 So.2d 761 (La.App.1949), and held that:

> The proper standard [in the identification of a statutory employer] is whether the activity done by the injured employee or his actual immediate employer is part of the usual or customary practice of the principal or others in the same operational business.

This court then pronounced the specific considerations on which this legal standard was based:

> More specifically, we should first consider whether the particular principal involved in the case does the type of work performed by the contractor and whether the contractor's work is an integral part of the work customarily performed by the principal.

If *either* of these situations exist, then there is a statutory employment relationship *and the inquiry ends there.* If, however, the principal does not normally engage in this type of activity, or if it is not normally a part of his practices, then it is necessary to determine if others engaged in businesses similar to that of the principal customarily do this type of work or if it is an integral part of their businesses.

If *either* of these inquiries yields an affirmative answer, then the general custom of the trade will control to make the relationship between the principal in question and his contractors' employees that of statutory employer and employee.

613 F.2d at 71 (emphasis added).

Employees of Gulf regularly perform the same repair and maintenance work on compressor engines that the plaintiff was doing at the time of his accident. In fact, a Gulf mechanic, Jones, was repairing a compressor on the same platform as Barrios at the time of the accident. Gulf regularly kept a mechanic crew in the Quarantine Bay area and hired contract mechanics such as Barrios to handle the overload repair work. The Gulf mechanics and the Engine & Gas mechanics did the same type of work. Thus, the first "statutory employer" consideration pronounced in *Blanchard* has been met.

Further, the repair and maintenance work being performed by the Engine & Gas mechanics was an "integral part" of Gulf's customary work. Gulf is in the business of producing, refining, and selling gas and oil. After a well ceases to flow from its natural reservoir, it is necessary to lift artificially the gas or oil out of the well to maintain production. The compressors on which the Gulf and Engine & Gas mechanics worked were used to compress natural gas to approximately 900 pounds per square inch, which was returned to the well through a piping system that lifted the oil and gas to the surface. It was essential for Gulf to keep the compressors in top working condition at all times. Since the first two *Blanchard* considerations have been met,

Gulf is the statutory employer of Barrios, and the tort claim against Gulf was properly dismissed by the district court.

Even if the strict "essential to business" test were applied to this fact situation, the result would be the same. *See Perry v. Texaco Co.,* 320 So.2d 310 (La.App.1975) (where the Louisiana court held that repair or installation of a compressor unit is part of an oil company's "trade, business or occupation" under L.S.A.–R.S. 23:1061).

In sum, since Barrios has not shown the requisite seaman's status entitling him to relief under the Jones Act or general maritime law and because Gulf is Barrios' statutory employer, the summary judgment of the district court is

AFFIRMED.