430 So.2d 1235 (1983)
Robert RODRIGUE
v.
A. Deutsche O'NEAL, Jr.
No. 82 CA 0655.
Court of Appeal of Louisiana, First Circuit.
April 5, 1983.
*1236 Joseph R. Raggio, Baton Rouge, for plaintiff and appellant.
Pamela Walker, Baton Rouge, for defendant and appellee Appalachian Ins. Co.
Joseph A. Reilly, Jr., Houma, for defendant and appellee A. Deutsche O'Neal Jr. and the Travelers Ins. Co.
Before LOTTINGER, COLE and CARTER, JJ.
LOTTINGER, Judge.
This appeal arises from the granting of a summary judgment in favor of a defendant insurer in a legal malpractice action. Plaintiff, Robert Rodrigue, sued A. Deutsche O'Neal, Jr. and three professional liability insurers[1], claiming that O'Neal, plaintiff's former attorney, allowed plaintiff's tort claim to prescribe, rather than diligently prosecuting same.[2] Defendant Appalachian Insurance Company moved for summary judgment, contending that it did not provide coverage for O'Neal during the time in which plaintiff's suit prescribed. From the granting of the summary judgment, dismissing Appalachian Insurance Company from the suit, plaintiff has filed a devolutive appeal.

*1237 FACTS
Plaintiff alleged in his petition that he was injured on or about May 19,1973, while working offshore as an employee of Frank's Casing Crew as a floor hand. He alleged that his injuries were caused through the negligence of various employees of his employer, Sea Drilling Company, and/or Amoco Oil Company.
Plaintiff was injured while working on a "self-contained platform rig" owned by Sea Drilling Company. The rig was leased to Amoco and was affixed to Amoco's stationary production platform in the field known as Eugene Island Block 215 on the outer continental shelf.
Appalachian provided coverage to defendant O'Neal only for the period from September 10, 1975 to October 1, 1977. Thus, the claim(s) assertable by plaintiff and the prescription period(s) applicable thereto are determinative of Appalachian's coverage, since the policy covered acts or omissions occurring during the policy period.[3]

TRIAL COURT
Appalachian Insurance Company moved for a summary judgment in its favor on the grounds that plaintiff's injury occurred on a fixed platform rig on the outer continental shelf; that the applicable prescriptive period for such injuries is one year; that any alleged negligence of defendant O'Neal occurred on or prior to May 19,1974, the date on which plaintiff's claim prescribed; and that it was, therefore, entitled to a judgment dismissing the plaintiff's claims against it.
The trial court opined that the central issue involved in determining whether Appalachian provided coverage for defendant O'Neal's alleged acts and omissions was whether or not the self-contained platform rig could be considered a vessel for purposes of the Jones Act and the general maritime law of torts.
After a hearing on the motion, the trial court concluded that Sea Drill Rig No. 12 was not a vessel, that plaintiff's tort claim(s) were governed by Louisiana law and the one year prescription of La.Civ. Code art. 3536, and that such claim(s) prescribed on May 19,1974, prior to commencement of Appalachian's coverage. Thus, Appalachian was entitled to judgment as a matter of law, and was granted summary judgment. This appeal followed.

SPECIFICATIONS OF ERROR
Plaintiff-appellant, Robert Rodrigue, assigns the following specifications of error:
1. The Trial Court erred in finding that the issue of the classification of a drilling rig as a vessel or non-vessel was an issue of law.
2. The Trial Court erred by failing to find that under its own conclusions of fact that the drilling rig question was a vessel.

APPLICABLE LAW
If the Sea Drill Rig No. 12 is considered a "vessel," then Rodrigue could have pursued a Jones Act (46 U.S.C. § 688) claim against his employer and a tort claim under the general maritime law against Sea Drilling and Amoco. A Jones Act claim is prescribed by the passage of three years from the date of injury, 46 U.S.C. § 688, incorporating 45 U.S.C. § 56. Maritime tort claims are barred by the doctrine of laches, Barrois v. Nelda Faye, Inc., 597 F.2d 881 (5th Cir. 1979); Federal Commerce & Navigation Co., Ltd. v. Calumet Harbor Terminals, Inc., 542 F.2d 437 (7th Cir.1976). The date of the accident was May 19, 1973; thus, if the Sea Drill Rig No. 12 is a "vessel," then the negligent acts and omissions of defendant O'Neal in allowing plaintiff's personal injury claim to prescribe would have been committed at least in part during the period of *1238 Appalachian's coverage. In such case, summary judgment herein would be erroneous.
If the Sea Drill Rig No. 12 is not considered a vessel, as an attachment to a stationary production platform, the rig is part of an "artificial island" and is governed by the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, et seq. In such case, the Lands Act makes the law of the adjoining state applicable to injuries received by workers on fixed drilling platforms on the outer continental shelf, 43 U.S.C. § 1333(a)(2), Rodrigue v. Aetna Casualty and Surety Company, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969). Any tort claim asserted by plaintiff would be governed by La.Civ.Code art. 3536 as to prescription. Chevron Oil Company v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). Thus, if the rig is not a vessel, plaintiff's personal injury claim would have prescribed May 19, 1974, prior to the commencement of Appalachian's coverage, and summary judgment herein would be correctly rendered.
Thus, we agree with the trial court that the paramount issue is the classification of the Sea Drill Rig No. 12.

SPECIFICATION OF ERROR NO. 1
Plaintiff contends that what constitutes a vessel for purposes of determining admiralty jurisdiction and seaman's status of an injured worker is normally a question of fact. Thus, plaintiff argues, such question should not be resolved by summary judgment, but should be determined by the trier of fact.
However, the United States Fifth Circuit has held that what constitutes a vessel for purposes of seaman's status may be decided on summary judgment if the undisputed material facts establish the mover's right to judgment as a question of law, Barrois v. Engine and Gas Compressor Services, Inc., 669 F.2d 350 (5th Cir.1982); Blanchard v. Engine and Gas Compressor Services, Inc., 575 F.2d 1140 (5th Cir.1978). Since seaman's status is primarily contingent upon a finding that the injured party is more or less permanently assigned to a vessel, Offshore Company v. Robison, 266 F.2d 769 (5th Cir.1959), we find that what constitutes a vessel may be determined on summary judgment as a matter of law if there are no undisputed facts as to the nature of the structure. See: Myers v. Howell Electric Motors Company, 365 So.2d 541 (La.App. 3rd Cir.1978), writ denied 367 So.2d 1185 (La.1979); see also Alexander v. Hudson Engineering, Incorporated, 378 So.2d 156 (La.App. 1st Cir.1979).
The trial court found that the material facts as to the nature of the Sea Drill Rig No. 12 were undisputed. The trial court's findings of fact are largely unchallenged on appeal by plaintiff. Thus, summary judgment was not an inappropriate procedural vehicle herein.

SPECIFICATION OF ERROR NO. 2
The trial court found the following to be undisputed material facts:
"The Number 12 is a `self-contained platform rig'; it is not a jack-up rig. It is designed to rest on a permanent platform. From that vantage point it can be `skidded' to reach several different drilling positions as far as six to eight feet apart.
"The Number 12 has living quarters, a galley, and a regular crew. It has a derrick permanently attached to it, and general equipment, such as derrick cables, wrenches, air tuggers and tongs. Specialized equipment is provided by any subcontractors, such as casing crews and cement work crews.
"The Number 12 has no kind of self-contained power; in other words, it cannot move itself from place to place. It has never been equipped to so move. Nor does it have a tender vessel, or motorized vessel, which stays with the rig constantly. The rig does not float; it is designed to rest on a platform.
"A self-contained platform rig is used in the following manner. A company such as Sea Drilling Company consumates a lease with an operator (a major oil company or an independent). The operator builds a platform in the gulf or elsewhere, which platform is permanent, to be used as a production platform after the drilling operation ceases.

*1239 "The self-contained platform rig is transported to the platform via barges. It is put onto large offshore barges by hugh [sic] cranes, secured down, and moved with tugboats to the location. The rig's crew members are not actually on the rig when it is being transported. They are transported to location by crew boats and/or helicopters. Mr. Bob Kubelka, whose deposition was filed into evidence, was the supervisor of the Number 12 crew at the time of the accident.
"Once the self-contained platform drilling rig has been taken to the platform it is lifted from the barges and placed on the platform. It remains there until all drilling is complete, which normally takes about a year. The rig is then removed and moved by barge to another site, if it is leased, or back to land for storage until it is leased."
Determinative factors as to whether a structure is a vessel are the purpose for which the structure is built and the business in which it is engaged. The Robert W. Parsons, 191 U.S. 17, 24 S.Ct. 8, 48 L.Ed. 73 (1903); Guidry v. Continental Oil Company, 640 F.2d 523 (5th Cir.1981), cert. den. 454 U.S. 818,102 S.Ct. 96, 70 L.Ed.2d 87. "Vessel" includes conventional ships and special purpose structures not usually employed as a means of transport on water but designed to float on water. Offshore Company v. Robison, supra.
We are of the opinion that the Sea Drill Rig No. 12 is not a vessel. Although it is designed to be moved from platform to platform, it cannot float and is not susceptible of navigation under its own or other power. The rig is not towed or floated to platforms, as are jack-up rigs and submersible drilling barges, but rather is onloaded and off-loaded onto transport barges and drilling platforms by cranes. We thus agree with the trial court that the rig in question is clearly not a navigable structure capable of being used as a means of transportation, nor is it a special purpose vessel designed to float on water.
Since we find that the rig on which plaintiff was injured was part of a fixed platform rather than a vessel, plaintiff's tort action would have been governed by Louisiana law, Rodrigue and Chevron Oil Company, supra. Thus, plaintiff's tort action prescribed prior to the coverage of Appalachian. (See discussion, infra.) For this reason, Appalachian is entitled to judgment as a matter of law, and inasmuch as there is no serious dispute as to the material facts surrounding the nature of the rig, summary judgment was correctly rendered by the trial court.

DECREE
Therefore, for the above and foregoing reasons, summary judgment of the trial court in favor of defendant, Appalachian Insurance Company, dismissing this defendant from plaintiff's suit, is hereby affirmed. All costs of this appeal are assessed to plaintiff-appellant, Robert Rodrigue.
AFFIRMED.
NOTES
[1] Sued as professional liability insurers of O'Neal were Travelers Insurance Company, Appalachian Insurance Company, and National Union Fire Insurance Company.
[2] The former wife of plaintiff, Glenda Rodrigue Forse, was married to plaintiff at the time of his injuries, and intervened in the suit.
[3] The policy also covered acts and omissions occurring prior to the policy period if claim was made against the insured during the policy period and the insured did not know or have reason to know of same when coverage commenced. However, since the instant suit was not filed until March 27, 1980, after the end of the Appalachian's coverage, this coverage provision is of no consequence herein.