**William E. HODGES, Jr.,
Plaintiff-Appellant,**

**United States Fidelity & Guaranty
Company, Intervenor-Appellant,**

v.

**EXXON CORPORATION,
Defendant-Appellee.**

No. 83–3405
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 19, 1984.

George & George, Vincent J. DeSalvo, Baton Rouge, La., for Hodges.

Owen, Richardson, Taylor, Mathews & Atkinson, John W. Perry, Jr., Baton Rouge, for intervenor-appellant U.S. Fidelity & Guar.

William J. Sommers, Jr., Randall M. Ebner, New Orleans, La., Lane & Clesi, Baton Rouge, La., for defendant-appellee.

Before BROWN, TATE and HIGGINBOTHAM, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

In this Louisiana diversity case, William Hodges appeals the District Court's grant of summary judgment. The Court found that appellee Exxon was Hodges' "statutory employer" within the meaning of La. Rev.Stat.Ann. § 23:1032 (West Supp.1982) and thus could be liable to Hodges for workmen's compensation benefits but not as a third party for damages in tort. Finding no material fact in dispute, we affirm.

## Facts

William E. Hodges, Jr. was injured on August 7, 1980, while performing maintenance work on a chemical reactor at Exxon's chemical plant in Baton Rouge, Louisiana. Hodges, a pipefitter by trade, was employed by National Maintenance Corporation (National). In September of 1973, National contracted with Exxon to perform maintenance work at Exxon's Baton Rouge facility. Pursuant to this contract, Hodges had worked at Exxon's Baton Rouge plant for about 6 years prior to the time of the accident.

Exxon Chemical Americas is a division of Exxon Corporation which manufactures a wide range of petrochemical products from by-products of the petroleum refining process. One of the products manufactured at the Exxon chemical plant in Baton Rouge is plasticizer, a raw material used in the processing and manufacture of vinyl and plastic. One of the first and most essential steps in the manufacture of plasticizer is to break apart the hydrocarbon molecules in petroleum by-products through processing in a reactor unit. Exxon operates and maintains three reactor units at its Baton Rouge plant.

In order to keep the reactors running at optimum levels, Exxon engages in periodic maintenance, including routine replacement of working parts and intermittent repair. At the time of the accident, Exxon employed about 90 pipefitters and 45 machinists, and used National's employees to perform overload or excess maintenance and repair work.

On the day Hodges was injured, he and four other National employees had been instructed to perform a "turnaround" on one of the Exxon reactors. A turnaround is an extensive maintenance job necessitating removal of the top portion of the reactor and replacement of worn parts. Once the new parts are in place and the reactor is reassembled, the reactor must be hydrostatically tested. The vessel is filled with water and pressurized. If a leak is discovered, the vessel is de-pressurized and the gasket bolts are tightened.

Hodges' injury occurred during the hydrostatic testing procedure. The National crew found that the vessel was leaking, and Hodges was given an air hose to blow the water off the top of the reactor while the other crew members tightened the bolts. A pyrex sight glass, which enables the workers to view the interior of the vessel, exploded. Glass fragments struck Hodges forcefully around the face and chest, severely injuring him. Hodges was taken to a hospital for treatment, and later brought suit in the District Court.

Exxon moved for summary judgment, claiming its statutory employer status precluded Hodges from recovering against it in tort. The District Court concluded that there was no genuine issue of fact as to whether Hodges' injuries occurred while Exxon was Hodges' statutory employer; thus, Hodges' exclusive remedy lay under the Louisiana Workmen's Compensation Act. La.Rev.Stat.Ann. § 23:1032 (West Supp.1982).

## Summary Judgment and the Statutory Employment Relationship

■ Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the burden of showing that there is no material fact in dispute, and every reasonable inference arising from the record must be resolved in favor of the party opposing the motion. *Penton v. Crown Zellerbach Corp.*, 699 F.2d 737, 741 (5th Cir.1983); *Murphy v. Georgia-Pacific Corp.*, 628 F.2d 862, 866 (5th Cir.1980).

■ Under Louisiana law, a principal is liable for workmen's compensation benefits to the employees of any contractor engaged to perform work that is part of the principal's "trade, business or occupation." La.Rev.Stat.Ann. § 23:1061 (West 1964). In such a circumstance, the principal is known as the employee's "statutory em-

ployer." Where a statutory employment relationship exists, an injured employee's claim against his statutory employer is limited to workmen's compensation benefits. La.Rev.Stat.Ann. § 23:1032 (West Supp. 1982). Thus, if Exxon was Hodges' statutory employer, summary judgment for Exxon in this tort action was proper.

Interpreting the test for whether a statutory employment relationship exists begins with our opinion in *Blanchard v. Engine & Gas Compressor Services, Inc.,* 613 F.2d 65 (5th Cir.1980) ("*Blanchard II*"), where we were confronted with the task of formulating a consistent approach to the Louisiana law.[1] In *Blanchard II*, we specifically rejected the "essential to business" test of *Thibodaux v. Sun Oil Co.,* 40 So.2d 761 (La.App.1949), as the controlling factor in identifying the statutory employer. The proper standard, we held, was

> whether the activity done by the injured employee or his actual immediate employer is part of the usual or customary practice of the principal . . . .
>
> \* \* \* \* \* \*
>
> More specifically, we should first consider whether the particular principal involved in the case customarily does the type of work performed by the contractor and whether the contractor's work is an integral part of the work customarily performed by the principal.

*Blanchard II, supra,* 613 F.2d at 71.

The Louisiana Supreme Court in *Lewis v. Exxon Corp.,* 441 So.2d 192, *opinion on rehearing,* 441 So.2d 197 (La.1983), recently expressed the test slightly differently:

> First, the 'work' must be part of the principal's 'trade, business or occupation.' Second, the principal must have been engaged in that trade, business or occupation at the time of the injury.
>
> \* \* \* \* \* \*

Generally, in order for a work or project to be within a principal's trade, business or occupation, it must be routine or customary, or some other type of activity which is necessary for the principal's day-to-day operations. Put another way, the works contemplated by the statute are those activities which are an actual part of the nature and purpose of the principal's enterprise. Extraordinary or nonrecurring constructions or repairs usually are outside the scope of the trade or business of manufacturing or production concerns.

*Lewis, supra,* 441 So.2d at 197–98 (citations omitted). In our view, despite the differing language of the two tests, analysis of the problem under either is the same. Both tests require a factual determination of whether the actual scope of the work contract under which the alleged statutory employee performs his duties is within the nature and purpose of the principal's trade, business or occupation.

We find that the undisputed facts of this case were appropriate for summary disposition under the above standards. The facts clearly demonstrated that National's contract with Exxon was seven years old by the time Hodges was injured. Hodges himself had worked at Exxon for six years before the injury. Exxon supervisory personnel testified in their depositions that Exxon used National's maintenance crews to perform routine repair and maintenance tasks on the plasticizer-producing equipment when Exxon's regular employees were engaged elsewhere. The affidavit of Thomas Michael Beckers, plasticizer department maintenance supervisor at Exxon's Baton Rouge plant, states that the reactor units at the facility provide an "essential" and "integral" part in the process of manufacturing plasticizer. More important to the inquiry here, however, is Beckers' statement that the reactor units are regularly maintained and routinely inspected—by

---

1. In *Blanchard v. Engine & Gas Compressor Services, Inc.,* 575 F.2d 1140, 1145 (5th Cir. 1978) ("*Blanchard I*"), the statutory employment issue was certified to the Louisiana Supreme Court for resolution because we found

the Louisiana jurisprudence to be "somewhat inconsistent." However, that Court declined to answer. *See Blanchard II,* 613 F.2d at 68–69 n. 2.

both National employees and Exxon's own employees. In fact, at the time of Hodges' injury, Exxon employed "approximately 90 pipefitters and 45 machinists who were capable of performing the type of work being performed by Mr. Hodges at the time of his alleged injury."

■ In *Barrios v. Engine & Gas Compressor Services, Inc.,* 669 F.2d 350 (5th Cir.1982), we held that routine maintenance on natural gas compressors which provided pressurized gas to fuel an oil rig was an "integral part" of the employer's "customary" work. *Id.* at 354. Summary judgment for the employer was therefore found to be appropriate in that situation. *Id.* Similarly, in *Lewis, supra,* the Louisiana Supreme Court specifically held that "[g]eneral maintenance and repair work, which by their nature allow the smooth and continued operations of the principal, are within the scope of the statute." 441 So.2d at 198, *citing Barnes v. Sun Oil Co.,* 362 So.2d 761, 764 (La.1978). We recognize, as did the Court in *Lewis,* that we must focus not on the individual task performed by the worker, but rather on the overall project for which the contractor was hired. *Lewis, supra,* 441 So.2d at 199. In *Lewis,* however, the employee was injured while installing an "orifice run" as a part of an overall plan for converting an Exxon plant to a new production process. Although Exxon's own employees routinely installed such orifice runs throughout the existing plant, the Louisiana Supreme Court found that summary judgment was improper because Exxon was not in the business of converting existing plants from one manufacturing process to another. *Id.* We find the facts of the instant case to be more similar to *Barrios* than to *Lewis.*

In *Chavers v. Exxon Corp.,* 716 F.2d 315 (5th Cir.1983), we focused our inquiry on "'whether the particular principal involved in the case customarily does the type of work performed by the contractor.'" *Id.* at 317, *citing Blanchard II, supra,* 613 F.2d at 71. Clifford Cobb, who was Exxon's mechanical coordinator at the time of Hodges' injury, testified in his deposition that Exxon's pipefitters and machinists were qualified to perform, and did perform, turnaround operations on the reactor units. Henry Wailes, another Exxon employee, testified that although Exxon employees could have performed the job in question, he personally had never seen them do so on "C" reactor, where the injury occurred. Hodges proffered no testimony that controverted the Cobb or Wailes depositions; in fact, Hodges and Jim Pruyn, another National crew member, testified that they did not know whether Exxon's employees could have done or did do similar work.

■ We find these undisputed facts to be precisely in keeping with those that we found justified summary disposition in *Darville v. Texaco,* 674 F.2d 443 (5th Cir.1982), where a contractor's employee was killed in an explosion while vacuuming a petroleum separator. Like Hodges in the instant case, the survivors of the deceased worker argued that triable issues of fact existed as to whether vacuuming the separator was a part of the employer's business and whether the employer's failure to prove that its own employees ever performed the task prevented it from being a part of its regular business. *Id.* at 445. We disagreed, finding that evidence that the principal's own employees performed the same tasks elsewhere in the operation supported our conclusion that the statutory employer relationship existed. Thus, even if Wailes' testimony that he had never seen Exxon employees perform a turnaround on "C" reactor could be taken to mean (as Hodges alleges on appeal) that National performed *all* maintenance work on that particular vessel, summary judgment still would be permissible because the undisputed evidence shows that Exxon often used its own employees to perform similar maintenance work on the other reactors.

We are unconvinced by appellant's assertion that the Louisiana Supreme Court's decision in *Benson v. Seagraves,* 436 So.2d 525 (La.1983), dictates a different conclusion. In *Benson,* the subcontractor's employee, Benson, was engaged to perform electrical engineering design work in con-

nection with a new power substation being built by the employer, an electrical cooperative. The Louisiana Court found that the design work was not within the "trade, business, or occupation" of the employer. *Id.* at 529.

Appellant argues that *Benson* required proof that the owner's own employees *actually perform* the specific work in question in order to find the existence of the statutory employer relationship. We find this to be a misconstruction of the holding of the *Benson* Court. In considering whether the work performed by Benson was part of the employer's trade, business, or occupation, the Louisiana Supreme Court focused on the fact that the employer had no employee of its own who had ever done, or was capable of doing, the work performed by Benson. *Benson, supra,* 436 So.2d at 529. Far from requiring *actual performance* of the work in question, the *Benson* Court pointed out that because there was no employee of the principal who could have done or had ever done the work, no employee "customarily" did the work. *Id.*

Our conclusion in this case is also justifiable under *Forno v. Gulf Oil Corp.,* 699 F.2d 795 (5th Cir.1983), where we found that the employees of a painting contractor were statutory employees of the principal despite the fact that the principal employed no painters of its own at the facility in question. We upheld the grant of summary judgment for the principal, finding it sufficient that Gulf Oil employed painters at various other facilities throughout the country. *Id.* at 797.

We recognize that a showing that the *particular task* performed by the alleged statutory employee could have been performed by the principal's own employees would be inadequate in and of itself to justify a finding that the statutory employer relationship existed. *Penton v. Crown Zellerbach Corp.,* 699 F.2d 737, 741 (5th Cir.1983); *Blanchard II, supra,* at 71. *See also Guinn v. Progress Drilling, Inc.,* 398 So.2d 128, 130 (La.App.1981). Rather, the more relevant inquiry centers around "whether the *project* on which the employ-

ee in question was injured was the sort of project which the principal usually employed his own employees to perform (e.g., new construction or routine repair)." *Hall v. Crown Zellerbach Corp.,* 715 F.2d 983, 987 (5th Cir.1983). Indeed, our cases have overwhelmingly relied upon facts indicating that the principal used its own employees to perform similar projects elsewhere within its operation in validating the use of summary judgment. *See Blanchard II, supra; Barrios, supra; Darville, supra;* and *Forno, supra.* Furthermore, Hodges was not only engaged in a work project that Exxon's employees had on other occasions performed themselves, but as we previously have pointed out, the project itself was within the "trade, business or occupation" of Exxon's plasticizer facility. *See Lewis, supra,* 441 So.2d at 197.

### Conclusion

We find no material fact in dispute here. The District Court's grant of summary judgment in favor of appellee Exxon was correct.

AFFIRMED.