**Jerry Lee RAYNES, Plaintiff,**

v.

**HASSIE–HUNT TRUST, Defendant.**

**Civ. A. No. H83–0328(R).**

United States District Court,
S.D. Mississippi,
Hattiesburg Division.

Oct. 9, 1984.

**820**

Beth C. Clay, Thomas, Price, Alston, Jones & Davis, Jackson, Miss., for defendant.

Larry O. Norris, Hattiesburg, Miss., for plaintiff.

## OPINION

DAN M. RUSSELL, District Judge.

This cause is before the Court on defendant's motion for summary judgment. Under Fed.R.Civ.P. 56(c), a motion for summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* Once a motion for summary judgment is made and supported with proper affidavits, Fed.R.Civ.P. 56(e) requires the adverse party to "set forth specific facts showing that there is a genuine issue for trial. If he does not respond, summary judgment, if appropriate, shall be entered against him." *Id.*

After listening to oral argument and reviewing the submitted deposition excerpts, affidavits, and pleadings, the following undisputed facts are revealed:

1. Plaintiff Raynes is a citizen of Mississippi and there is complete diversity of citizenship. This Court has jurisdiction under 28 U.S.C. § 1332.

2. Defendant Hassie-Hunt Trust (hereinafter referred to as Hunt) is in the business of producing, refining, and marketing oil and gas.

3. Defendant Hunt is the owner of the Harvey "C" Heater Platform located south of Venice, Louisiana.

4. Defendant Hunt contracted with Arrow Contractors of Jefferson, Inc. to provide routine maintenance and repair services on Hunt leases.

5. Plaintiff Raynes was an employee of Arrow Contractors. He entered into employment with Arrow Contractors in the State of Louisiana. He also resided in Louisiana during the normal work week.

6. Defendant Hunt's own employees can and do at times perform maintenance and repair services.

7. Plaintiff received workmen's compensation benefits from Arrow Contractors' insurance carrier.

8. The defendant furnishes the tools as well as assigns and supervises the Arrow crew on their daily work assignments. There is some conflict as to the actual degree of supervision that Hunt exercises over the work performed by Arrow. However, it is not necessary that this conflict be resolved to solve this motion.

## LOUISIANA SUBSTANTIVE LAW IS APPLICABLE UNDER MISSISSIPPI'S CONFLICT OF LAWS RULE

■ In a diversity action, a federal court is to apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Boardman v. United States Automobile Association,* 742 F.2d 847 at 849 (5th Cir. 1984). In the case of *Mitchell v. Craft,* 211 So.2d 509 (Miss.1968), the Mississippi Supreme Court modified, but did not overrule, earlier cases which decided the question of choice-of-law by the determining factor of where the injury occurred. In *Mitchell,* the situs of injury was still held determinative of the rights and liabilities of the parties *"unless* with respect to the particular

issue, some other state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied." *Id.* at 516. In determining the significance of the relationship, or so called "center of gravity", the court adopted guidelines set forth in the Restatement (Second) of Conflict of Laws § 145 (1971).[1]

In the instant case, not only did the injury occur in Louisiana, but most of the significant relationships concerning the occurrence were centered in Louisiana. The only tie plaintiff can assert with Mississippi is that he was a Mississippi citizen at the time of the injury.

■ The plaintiff, citing Restatement (Second) of Conflict of Laws § 6 (1971)[2], argues "that Mississippi has the most attractive policies for a suit of this nature."[3] In determining the relevant policies of all interested states, the question is not one of attractiveness but one of relative interest. "The forum should seek to reach a result that will achieve the best possible accommodation of these policies. The forum should also appraise the relative interests of the states involved in the determination of the particular issue. In general, it is fitting that the state whose interests are most deeply affected should have its local law applied." Restatement (Second) of Conflict of Laws § 6 comment f (1971).

■ The interests of the State of Louisiana will be directly affected by the decision of this Court, for it is there that the applicable law governing the relationship between the parties has been centered. The contract for employment between the plaintiff and Arrow Contractors and the contract for maintenance and repair between Arrow Contractors and Hunt were entered into, and contemplated performance, in Louisiana. In addition, the injury itself occurred in Louisiana. These factors alone have been held sufficient to "give the state of Louisiana a significant interest in the matter and support the application of the Louisiana Workmen's Compensation Act." *George v. Home Indemnity Company*, 420 F.2d 782, 786 (5th Cir.1969). Therefore, the rights and liabilities of the parties should be determined by the law of Louisiana, the state which has the most substantial relationship to the parties.

## TORT LIABILITY OF A PRINCIPAL UNDER LOUISIANA LAW

■ Under Louisiana law, a principal will be held liable for Workmen's Compensation benefits to the employees of his contractors who perform work which is part of the principal's "trade, business or occupation."[4] Such a principal is considered a

1. § 145 The General Principle
(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.

2. § 6 Choice-of-Law Principles

(1) A court, subject to constitutional restrictions will follow a statutory directive of its own state on choice of law.
(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of a particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

3. Brief of Respondent at 6.

4. La.Rev.Stat.Ann. § 23:1061 (West 1950) states:

statutory employer of his contractor's employees. Once a statutory employment relationship is determined to exist, "an injured employee's claim against his statutory employer is limited to Workmen's Compensation benefits." *Hodges v. Exxon Corp.,* 727 F.2d 450, 453 (5th Cir.1984). The statutory employer cannot be sued in tort. *Blanchard v. Gulf Oil Corp.,* 696 F.2d 395, 396–397 (5th Cir.1983) ("Blanchard III").[5] The burden is placed upon the defendant claiming the status of statutory employer to prove where a statutory relationship exists. *Reeves v. Louisiana and Arkansas Railway Company,* 282 So.2d 503 (La.1973).

This leads us to the issue of whether a statutory employer relationship existed between the plaintiff and defendant. In *Blanchard v. Engine Gas and Compressor Service,* 613 F.2d 65 (5th Cir.1980) ("Blanchard II"), the court rejected the "essential to business test" and formulated a new test for determining whether a statutory employee relationship existed. The proper standard was held to include:

> "Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.
> "Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor."

whether the activity done by the injured employee or his actual immediate employer is part of the usual or customary practice of the principal or others in the same operational business;

Whether the particular principal involved in the case customarily does the type of work performed by the contractor and whether the contractor's work is an integral part of the work customarily performed by the principal;

Whether the principal, or others engaged in like operational activities, normally subcontract out the work or whether they have employees who can, and customarily do, do the work. *Id.* at 71.

In the subsequent case of *Lewis v. Exxon Corp.,* 441 So.2d 192, opinion on rehearing, 441 So.2d 197 (La.1983), the Louisiana Supreme Court listed two elements which must be met in order for a principal to be considered a statutory employer. "First, the 'work' must be a part of the principal's 'trade, business or occupation'. Second, the principal must have been engaged in that trade, business or occupation at the time of the injury." *Id.* at 197. Although

La.Rev.Stat.Ann. § 23:1032 (West 1950) states:
"The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the word 'principal' shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof."

**5.** Blanchard, a contractor's employee, was injured and received workmen's compensation benefits from the contractor's insurance carrier. *Blanchard v. Engine Gas and Compressor Services, Inc.,* 575 F.2d 1140, 1141 n 2 (5th Cir.1978). Summary judgment was granted for the principal, Gulf Oil Company, in a subsequent suit for tort damages. *Blanchard III. See also Traylor v. Shell Oil Co.,* 400 So.2d 342 (La.App.1981).

the language of the two tests may vary, the same analysis is required. "Both tests require a factual determination of whether the actual scope of the work contract under which the alleged statutory employee performed his duties is within the nature and purpose of the principal's trade, business or occupation." *Hodges v. Exxon Corp.*, 727 F.2d 450, 453 (5th Cir.1984).

In order for work to be considered a part of the principal's trade, business or occupation, it must be routine, customary, or necessary for day-to-day operations of the enterprise and not an extraordinary or nonrecurring task. The enterprise must be accustomed to engaging in the work as a part of its regular activities. In addition, the employer should be equipped to handle the project in respect to manpower and equipment. *Lewis v. Exxon Corp.*, 441 So.2d at 198. The court is to focus on the overall project for which the contractor was hired and not on the individual task performed by the worker. *Id.* at 199; *Hodges v. Exxon Corp.*, 727 F.2d at 454. "General maintenance and repair work which by their nature allow the smooth and continued operations of the principal, are within the scope of the statute." *Lewis v. Exxon Corp.*, 441 So.2d at 198.

Defendant Hunt's affidavits of Joseph Eugene Inabnett III (Hunt's district superintendant responsible for the maintenance and operation of its facility), and Spiro Vasilijevich (field foreman of the site of plaintiff's accident), disclose that the general repair services being performed by Arrow Contractors were regular and customary in the daily operation of Hunt's business. Such repair and maintenance services, although normally subcontracted, are stated to be capable of, and sometimes are performed by defendant's own employees. No opposing affidavits have been offered to contradict these facts.

Louisiana jurisprudence is replete with cases involving the petroleum and refining industry where contracted activities of a maintenance and repair nature have been held to be part of the principal's trade, business or occupation. *Hodges v. Exxon Corp.*, 727 F.2d 450 (5th Cir.1984); (holding that independent contractor's employee who was injured while working on principal's chemical reactor was limited to a workmen's compensation claim against the principal since its employees performed similar maintenance). *Barrios v. Engine and Compressor Services, Inc.*, 669 F.2d 350 (5th Cir.1982); (holding routine maintenance and repair on natural gas compressors which provided pressurized gas to fuel an oil rig was an integral part of the employer's customary work). *Darville v. Texaco, Inc.*, 674 F.2d 443 (5th Cir.1982); (holding the vacuuming of a petroleum separator to be part of the principal's regular business, trade or occupation). *Traylor v. Shell Oil Co.*, 400 So.2d 342 (La.App.1981); (holding maintenance and repair work in the form of repairing a catalytic cracker at an oil company's refinery to be work within the trade, business or occupation of the principal). In particular, *see Arnold v. Shell Oil Co.*, 419 F.2d 43 (5th Cir.1969) and *Fontenot v. Stanolid Oil and Gas Co.*, 243 F.2d 574 (5th Cir.1957) in which the court held "that a heater treater is part of the regular operations of an integrated oil company for purposes of Section 23:1061 of the Louisiana Revised Statutes." *Arnold v. Shell Oil Co.*, 419 F.2d at 47.

The above cases substantiate the defendant's assertion that the maintenance and repair work performed by Arrow Contractors is within the trade, business or occupation of Hunt. They also reflect the proposition that the petroleum and refining industry as a whole customarily contracts with others for the performance of such services. When the case law is considered with the defendant's uncontradicted affidavits that Hunt's own employees were capable of, and did at times, perform such maintenance and repair work, the court must then conclude that there is no essential dispute of the fact that the plaintiff's work consisted of services which were regularly performed as an essential and integral part of Hunt's business. As such, Hassie Hunt Trust is adjudged to be the statutory employer of Plaintiff Raynes. This determi-

nation limits Hunt's liability to Workmen's Compensation benefits. Such a holding also precludes the assertion of a claim against Hunt based on the strict liability imposed by the Louisiana Civil Code.[6] *Davis v. Morrow,* 381 So.2d 1258, 1260 (La. App.1980); *Henson v. Travelers Insurance Co.,* 208 So.2d 366 (La.App.1968). Accordingly, the defendant's motion for summary judgment is hereby granted.

An order in accordance with this opinion shall be provided as set forth in the Local Rules.

---

**6.** La.Civ.Code.Ann. art. 2322 (West 1979) reads in pertinent part as follows: . "The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it. . . ."