Phillip Wayne ZUCCARELLO, David Zuccarello, Allison Zuccarello, Brian Zuccarello, and Iva Faye Smith Zuccarello, Plaintiffs-Appellants,

v.

EXXON CORPORATION, Defendant-Appellee.

No. 84-3122.

United States Court of Appeals, Fifth Circuit.

April 1, 1985.

Durant, Pierce & Malone, A. Clay Pierce, Jr., Baton Rouge, La., for David, Phillip, Brian and Allison Zuccarello.

Donna W. Lee, Baton Rouge, La., for Ivy Zuccarello.

William J. Sommers, Jr., Thomas K. Wetzel, Randall M. Ebner, New Orleans, La., for Exxon.

Before CLARK, Chief Judge, WISDOM, and HIGGINBOTHAM, Circuit Judges.

WISDOM, Circuit Judge:

The plaintiffs sought tort damages for the injuries and death of the decedent, an employee of an independent contractor hired by the defendant Exxon to perform work at Exxon's Baton Rouge, Louisiana refinery. Exxon asserted the defenses of contributory negligence and immunity in tort under La.Rev.Stat.Ann. § 23:1061 as the "statutory employer" of the decedent. The negligence issues were tried to a jury and the statutory employer issue was, by stipulation of the parties, tried to the judge. The jury found that Exxon was negligent and that the decedent was not contributorily negligent and had not assumed the risk of harm. The district court determined after trial that Exxon qualified as the statutory employer of the decedent and that Exxon was therefore liable only for workmen's compensation payments and not for damages in tort. Accordingly, the court dismissed the plaintiffs' suit. We hold that the court's finding that Exxon qualified as the statutory employer of the decedent under § 23:1061 was not clearly erroneous and we therefore affirm.

## I.

This case is a wrongful death and survival action brought by the family of the deceased, Jack Zuccarello. Zuccarello was employed as an electrician by Saia Electric Inc. Saia entered into a contract with the defendant Exxon to perform electrical and instrumentation work at Exxon's Baton Rouge refinery. On November 15, 1978, Zuccarello was injured at the Exxon plant while performing his duties for Saia when he stepped into a hole filled with scalding water that had come from an underground steam line utilized by Exxon in its refining operations. Zuccarello suffered severe burns to his foot, ankle, and leg. The burns did not heal properly, apparently because of a preexisting circulatory problem. On May 24, 1979, Zuccarello died less than

two days after undergoing vascular surgery.

Two of Jack Zuccarello's sons, Phillip and David, brought a wrongful death and survival action in federal district court against Exxon under Art. 2315 of the Louisiana Civil Code.[1] Jurisdiction was based upon diversity of citizenship. Zuccarello's surviving spouse, Iva Faye Smith Zuccarello, and two other surviving children, Brian and Allison, intervened as parties plaintiff. The intervenors' claims were limited to survival of action claims because their wrongful death actions had prescribed under art. 2315(D)[2]. Exxon filed a third-party demand against Saia for indemnity under the terms of the contract between Exxon and Saia.

The matter was tried to a jury upon theories of negligence and strict liability. The jury answered special interrogatories and found that Exxon's negligence caused the injuries to Zuccarello, that Exxon was in control of a defective item—the steam line system—which created an unreasonable risk of harm, that the defective steam system caused the injuries, and that Zuccarello was not contributorily negligent and did not assume the risk of harm. The jury also found that Saia was not negligent and awarded damages to Zuccarello for lost earnings, pain and suffering before death, medical expenses, and funeral expenses in the amount of $216,441.45. The jury declined to award any damages to Phillip and David.

■ Exxon asserted as an affirmative defense that it was immune from any tort claim by virtue of La.Rev.Stat.Ann. § 23:1061 (West Supp.1984). Under § 23:1061, a "principal" may become liable to pay workmen's compensation benefits to the employee of a subcontractor.[3] That section provides in pertinent part:

> Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him....

A person who qualifies as a "principal" under § 23:1061 is commonly referred to as

---

1. Article 2315 is the source provision for all tort law in Louisiana. Article 2315(A) provides: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La.Civ.Code Ann. art. 2315(A) (West Supp.1985).

2. Article 2315(D)(1)(a), which governs survival actions, provides: "The right to recover all ... damages [other than damages to property] caused by an offense or quasi-offense, if the injured person dies, shall survive for a period of one year from the death of the deceased in favor of: (a) The surviving spouse and child or children of the deceased, or either such spouse or such child or children...." La.Civ.Code Ann. art. 2315(D)(1) (West Supp.1985). Article 2315(D)(2), which governs wrongful death actions, provides: "The survivors in whose favor this right of action survives may also recover the damages which they sustained through the wrongful death of the deceased." La.Civ.Code Ann. art. 2315(D)(2) (West Supp.1985). No specific time limitation is given in art. 2315 for wrongful death actions. The interpretation has been that the action must be instituted by the proper beneficiaries within one year of the death. See, e.g., Trahan v. Liberty Mut. Ins. Co., La.1975, 314 So.2d 350; Johnson, Death on the Callais Coach: The Mystery of Louisiana Wrongful Death and Survival Actions, 37 La.L.Rev. 1, 30 (1976). Because the actions of the intervenors were commenced more than one year after Jack Zuccarello's death, their wrongful death claims had prescribed. The survival actions were permitted because Iva, Brian, and Allison had properly intervened under La.Code Civ.P. art. 1091 (West 1984) in the suit timely filed by Phillip and David. See Allstate Ins. Co. v. Theriot, La.1979, 376 So.2d 950.

3. "The original policy behind holding principals liable for the injuries sustained by the employees of his contractors was to prevent principals from contracting out their work in order to avoid workers' compensation liability." Lewis v. Exxon Corp., La.1983, 441 So.2d 192, 197 (opinion on rehearing).

a "statutory employer".[4] Under Louisiana law, workmen's compensation is an exclusive remedy. Any employer who is liable for workmen's compensation benefits, including a statutory employer under § 23:1061, is immune from tort liability for the occurrence upon which the compensation claim is based.[5] La.Rev.Stat.Ann. § 23:1032 (West Supp.1984); *Brown v. Cities Service Oil Co.*, 5 Cir.1984, 733 F.2d 1156, 1160.

In the trial of Exxon's statutory employer defense, while the court was considering the issue, the Louisiana Supreme Court granted a rehearing in *Lewis v. Exxon Corp.*, La.1983, 441 So.2d 197 (opinion on rehearing), to reconsider whether Exxon was the statutory employer of an employee of a contractor assisting in the conversion of Exxon's Baton Rouge plant from the production of ethanol to the production of isopropanol. The district court solicited comments from counsel as to whether it should withhold its decision pending resolution of *Lewis*, but decided to proceed with its decision. The court found that Exxon was Jack Zuccarello's statutory employer, entered judgment based on this finding, and dismissed the suit.

The plaintiffs filed a motion for a new trial upon the ground that a letter of authorization that was supposed to be attached to the contract between Exxon and Saia, defining the scope of the work Saia was doing for Exxon when Zuccarello was injured, had not been introduced into evidence. The plaintiffs asserted that they were entitled to consideration of the full contractual agreement in the court's ruling upon the statutory employer defense. The plaintiffs then filed an amended motion for a new trial after the Louisiana Supreme Court decided the *Lewis* case, alleging that the court should reconsider its findings of fact and conclusions of law in the light of that case. After oral argument and further briefing of the issue, the district court denied the plaintiffs' motion for a new trial and amendment of findings. The court again ruled that Exxon was the statutory employer of Zuccarello. The plaintiffs appealed.

## II.

### A. The District Court Applied a Proper Standard in Deciding the Statutory Employer Defense

■ The most recent decision of the Louisiana Supreme Court concerning the statutory employer defense is *Lewis v. Exxon Corp.*, La.1983, 441 So.2d 197 (opinion on rehearing). The plaintiffs contend that *Lewis* controls this case and that Exxon did not meet the test for statutory employer set forth in *Lewis*.[6] Because *Lewis* had not been decided when the district court issued its original findings of fact and conclusions of law, we must consider whether the district court applied a proper standard under Louisiana law for deciding whether Exxon was entitled to the statutory employer defense.

In its original findings of fact and conclusions of law, the district court relied on the test for statutory employer articulated in *Blanchard v. Engine & Gas Compressor Services, Inc. (Blanchard II)*,[7] 5 Cir.1980,

---

**4.** *Lewis v. Exxon Corp.*, La.1983, 441 So.2d 192, 197.

**5.** As we observed in *Chavers v. Exxon Corp.*, 5 Cir.1983, 716 F.2d 315, 318:

an integral part of making employees of individual contractors (who might not be able or willing to provide coverage) the employees of the principal for compensation purposes is the insulation of the principal from third-party liability for any injury sustained. The decision to so structure the law was a conscious legislative act.

**6.** The party asserting the statutory employer defense to tort liability has the burden of proving

that it qualifies as the statutory employer of the plaintiff. *Reeves v. Louisiana & Ark. Ry.*, La. 1973, 282 So.2d 503, 507.

**7.** In *Blanchard I*, this Court certified to the Louisiana Supreme Court the question of the proper test for determining whether an employee qualifies as a statutory employee under the Workmen's Compensation Act. *See Blanchard v. Engine & Gas Compressor Services, Inc. (Blanchard I)*, 5 Cir.1978, 575 F.2d 1140. The Louisiana Supreme Court declined the petition for certification, stating that "[t]he jurisprudence of this Court does not warrant an additional pronouncement at this time. *See Reeves*

613 F.2d 65. The Court in *Blanchard II* reviewed Louisiana jurisprudence concerning the statutory employer doctrine and concluded that the proper standard for judging whether a principal qualifies as a statutory employer "is whether the activity done by the injured employee or his actual immediate employer is part of the usual or customary practice of the principal or others in the same operational business". *Id.* at 71. More specifically, the Court further stated:

> [W]e should first consider whether the particular principal involved in the case customarily does the type of work performed by the contractor and whether the contractor's work is an integral part of the work customarily performed by the principal. If either of these situations exist, then there is a statutory employment relationship, and the inquiry ends there.

*Id.* The Court noted that in applying the test "it is proper to consider all facts which would or would not suggest a statutory employment relationship". *Id.* One such fact is "whether the principal, or others engaged in like operational activities, normally subcontract out the work or whether they have employees who can, and customarily do, do the work". *Id.*

The district court in the instant case noted that later federal cases have elaborated upon the *Blanchard II* test. In *Hall v. Crown Zellerbach Corp.*, 5 Cir.1983, 715 F.2d 983, 987, the Court explained that although "it is not determinative whether the employee performs duties (e.g. painting, welding, etc.) which the principal's employees also perform, it is relevant to a *Blanchard II* inquiry whether the *project* on which the employee in question was injured was the sort of project which the principal usually employed his own employees to perform (e.g. new construction or routine repair)". The district court concluded from *Crown Zellerbach* that "it is not just the particular task of Zuccarello that must be examined, but the type of

work performed by the independent contractor and its relationship to the work of the principal, Exxon". *Zuccarello v. Exxon Corp.*, No. 79–575–A, slip op. at 11 (M.D.La. Nov. 9, 1983).

The district court looked first to the contract between Saia and Exxon to determine the nature of the project upon which Saia employees were working at the time of Zuccarello's injury. Article 1 of the main contract provided that when requested by Exxon, Saia would "perform work in [Exxon's] facilities in the Baton Rouge, Louisiana, area of the nature described in the attached exhibit 'A.'" Exhibit "A" described the work only in general terms as "Electrical and Instrumentation work, including the furnishing of all labor, supervision, tools, and equipment, temporary buildings and facilities, supplies, transportation, field and material procurement services, and incidental materials required." Article 1 of the main contract further provided:

> This contract establishes the general terms and conditions applicable to work performed hereunder. The specific work which [Saia] shall perform and any special conditions or specifications therefor shall be described in written letters of authorization issued to [Saia] by [Exxon].

Neither party introduced into evidence a copy of the written letter of authorization issued to Saia for the particular work being performed at the time of Zuccarello's injury. The court therefore turned to testimony regarding the scope of the work, which had been offered and received in evidence without objection. Based upon the testimony presented, the court found that the work Saia was performing at the time of the accident consisted of installing electric lines in cable trays to convert a portion of a pneumatic control and communications system that allowed various units of the refinery to be monitored and controlled from a distance into an electrical control system. The court found that the electrical control system was a replacement for the existing

*v. Louisiana & Arkansas Ry.*, 282 So.2d 503 (La.1973); *Lushute v. Diesi*, 354 So.2d 179 (La. 1978); La.Sup.Ct.Rules XII, Sec. 1." *Blanchard II*, 613 F.2d at 68.

pneumatic system rather than a completely new system and therefore concluded that "the work being performed by Saia employees consisted of maintenance and repair services, simply an improvement of existing facilities". *Zuccarello v. Exxon Corp.*, No. 79–575–A, slip op. at 12 (M.D.La. Nov. 9, 1983). The court ruled that because "the replacement of obsolete or worn-out equipment in refinery production units is an integral part of the work customarily performed by the principal", Exxon qualified as Zuccarello's statutory employer under *Blanchard II. Id.*

The plaintiffs filed a motion for a new trial and amendment of findings, alleging that the letter of authorization that was supposed to be attached to the contract between Saia and Exxon had been omitted by Exxon, when the contract was admitted into evidence, "without the knowledge and consent of counsel" for the plaintiffs [8] and that the court should reconsider its findings based upon "the entirety of the contractual agreement in effect at the time of the injury". After *Lewis* was decided and before the court had ruled on the plaintiffs' motion, the plaintiffs filed an amended motion for a new trial and a motion to continue hearing on the first motion, alleging that the court should reconsider its findings of fact and conclusions of law in the light of *Lewis*.

After further briefing and oral argument on the statutory employer defense, the district court ruled that the plaintiffs had ample opportunity to offer the letter of authorization in evidence both before and during trial. The court ruled that the omission of evidence that was neither undiscoverable nor unavailable at the time of trial and would have been only cumulative, corroborative, or contradictory of other evidence presented at trial is not sufficient reason for granting a new trial, citing *Lloyd v. Gill*, 5 Cir.1969, 406 F.2d 585. The court also rejected the plaintiffs' mo-

tion for a new trial in the light of *Lewis*. The court ruled that, although it did not have the benefit of the most recent *Lewis* decision when it issued its original findings of fact and conclusions of law, its original opinion was "in keeping with the principles set out in the *Lewis* rehearing". *Zuccarello v. Exxon Corp.*, No. 79–575–A, slip op. at 3 (M.D.La. Jan. 19, 1984). The court distinguished the instant case from *Lewis* by noting that in *Lewis* the contractor was engaged in converting the plant itself from one type of production to another, a function not ordinarily a part of the business of Exxon, whereas in this case the contractor was replacing worn-out equipment in the refinery production units, a type of work that Exxon customarily performs.

The plaintiffs urge again on appeal that the district court should have considered the letter of attachment to the contract and that Exxon has not proved that it qualifies as a statutory employer under the standards set forth in *Lewis*. We reject both arguments.

**1. The Plaintiffs Have Waived Any Challenge to the District Court's Refusal to Consider the Letter of Attachment.** On appeal, the plaintiffs did not raise in their briefs the contention that the district court erred in refusing a new trial to consider the letter of attachment. Although the plaintiffs maintained at oral argument that the district court should have considered the letter of attachment and that they did not know of its existence until after trial, Fed.R.App.P. 28(a)(4) states that the brief of the appellant "*shall* contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on" (emphasis added). Therefore, when an appellant raises an issue for the first time at oral argument, the Court ordinarily will not consider it; failure to

---

**8.** The plaintiffs stated at oral argument that the parties had agreed before trial that the entire contract between Saia and Exxon, including the letter of authorization, would be admitted into evidence and that the letter of authorization was

at all times within the control of Exxon. The plaintiffs further stated that they did not discover until after trial that the letter of authorization had been omitted from the contract that was introduced into evidence.

satisfy the requirements of Rule 28 constitutes a waiver of the issue. *McGruder v. Necaise,* 5 Cir.1984, 733 F.2d 1146, 1148; *In re Municipal Bond Reporting Antitrust Litigation,* 5 Cir.1982, 672 F.2d 436, 439 n. 6; *Volyrakis v. M/V Isabelle,* 5 Cir.1982, 668 F.2d 863, 865 n. 1; *Gore v. Turner,* 5 Cir.1977, 563 F.2d 159, 168.

■ *2. The District Court Applied Standards Equivalent to Those of Lewis.* The Louisiana Supreme Court ruled in *Lewis* that two elements must be met for a principal to qualify as a statutory employer:

> First, the "work" must be a part of the principal's "trade, business or occupation." Second, the principal must have been engaged in that trade, business or occupation at the time of the injury. Absent either of these two conditions, the injury will not come within the scope of the workers' compensation program.

*Lewis v. Exxon Corp.,* La.1983, 441 So.2d 197, 198 (opinion on rehearing). It is clear that the district court implicitly applied the second element of this test, for the court considered whether the upgrading of the refinery control and communications system was part of the normal business of producing and refining petroleum products, the business of Exxon at the time of the injury.

With respect to the first element, the court applied standards equivalent to those set forth in *Lewis.* The Court in *Lewis* stated that for work or a project to be within a principal's trade, business or occupation, "it must be routine or customary ... or some other type of activity which is *necessary* for the principal's day-to-day operations. Put another way, the works contemplated by the statute are those activities which are an *actual part* of the nature and purpose of the principal's enterprise." *Id.* at 198 (emphasis added). The district court applied an equivalent standard in its finding that the control and communications system upon which Saia was working was "an essential and integral part of Exxon's usual trade, business or occupation".

*Zuccarello v. Exxon Corp.,* No. 79–575–A, slip op. at 6 (M.D.La. Nov. 9, 1983).

Similarly, the Louisiana Supreme Court held that the "specific task to which an individual employee is put should not be determinative of his coverage under the act". *Lewis,* 441 So.2d at 198. Rather, "[t]he contract project as a whole must be considered". *Id.* at 199. The district·court applied a similar standard when it ruled that "it is not just the particular task of Zuccarello that must be examined, but the type of work performed by the independent contractor and its relationship to the work of the principal, Exxon". *Zuccarello,* slip op. at 11.

Our conclusion that the district court applied standards equivalent to *Lewis* is reinforced by two recent Fifth Circuit decisions concluding that the analysis of *Blanchard II,* the test used by the district court here in its original findings of fact and conclusions of law, remains valid even after *Lewis.* In *Hodges v. Exxon Corp.,* 5 Cir.1984, 727 F.2d 450, 453, Judge Brown, the author of *Blanchard II,* concluded that

> despite the differing language of the two tests [in *Blanchard II* and *Lewis* ], analysis of the problem under either is the same. Both tests require a factual determination of whether the actual scope of the work contract under which the alleged statutory employee performs his duties is within the nature and purpose of the principal's trade, business or occupation.

More recently, in *Brown v. Cities Service Oil Co.,* 5 Cir.1984, 733 F.2d 1156, 1160, we reached the same conclusion that the *Blanchard II* test still applies and found "no significant variance made necessary" by *Lewis.*

We conclude that the district court applied a proper standard for deciding whether Exxon was the statutory employer of Zuccarello and did not err by refusing to grant a new trial or to amend its findings in the light of *Lewis.* We therefore must consider only whether the findings of the district court are clearly erroneous.

## B. The Findings of the District Court Are Not Clearly Erroneous

■ Undisputed evidence in the record establishes that at the time of Zuccarello's accident, Saia was installing electric control and communication lines in covered cable trays to convert a portion of Exxon's existing pneumatic system for controlling and monitoring production units in the refinery into an electric system. Since 1970 the pneumatic communication system had fed information into the Refinery Operations Control Center (ROCC building). The ROCC building contains computers used by Exxon in the central control of refinery operations. The conversion of the ROCC control system proceeded in phases. Saia was working on Phase IV at the time of the accident. Saia employees removed the covers from existing cable trays, installed new electrical cables, and replaced the tray covers. The ends of the cables were then connected to computers in the ROCC building by Exxon employees. At the time of the injury, Exxon had on its own payroll about 96 electricians and 14 apprentices.

The district court found that the Saia employees were performing routine electrical work in converting an outdated control system into a modern one, rather than installing a completely new system. There is ample evidence in the record to support this finding. Aldrich Matherne, an electrician working for Saia with Zuccarello at the time of the accident, testified that they were "upgrading" the old system to a new system and that it was routine electricians' work that did not require any special skills. Michael Nolan, an Exxon Zone Supervisor who supervised the installation work of contract employees, characterized the work with the control system as "an ongoing process of converting from pneumatic lines to electrical lines".

The court also found that the control system is "an essential and integral part of Exxon's usual trade, business or occupa-

tion". *Zuccarello v. Exxon Corp.*, No. 79–575–A, slip op. at 6 (M.D.La.1983). This finding is supported by the testimony of several witnesses. Nolan specifically stated that the ROCC control system was "integral to the operation of the refinery". Matherne testified that the refinery could not have operated without the ROCC control system. Alan Halphen, a first line supervisor for Exxon at the time of the accident, also testified that the refinery could not have been operated without the control system and that the work Saia was performing was "essential to the performance of the control center".

The district court found that Exxon "customarily does the type of work performed by the contractor and in fact actually performed some of the same type of work alongside Saia employees". *Id.* at 12. This finding is supported by Nolan's testimony. He was asked, "Was the type of work that the Saia employees were doing in November of 1978, regularly performed by Exxon employees on other occasions?" Nolan replied, "Exxon employees do it every day. They can do anything that needs to be done in that refinery." He also testified that when Saia employees ran into problems with the project, Exxon electricians would be sent to correct the problems. Moreover, Matherne testified that there were "Exxon people working alongside of the Saia crew on most of the projects".[9]

Finally, the district court found "that the replacement of obsolete or worn-out equipment in refinery production units is an integral part of the work customarily performed" by Exxon. *Id.* at 12–13. This finding is supported by Nolan's testimony that the process of converting the control and communications system had been ongoing in phases since about 1970. The refinery remained in operation during that entire time, demonstrating that the conver-

---

**9.** Nolan and Halphen testified that Exxon chose to hire Saia, rather than just using Exxon electricians, for the conversion project because of Exxon's general career employment philosophy. Exxon prefers to utilize contractors to meet short-term or nonrecurring needs for additional workers rather than hire additional Exxon employees who might have to be laid off after a short-term project is completed.

sion process was not an extraordinary event that required the refinery to cease its normal operations. Matherne testified that the upgrade of the control system was like "putting new tires on a car". We find that there is adequate evidence to support the district court's conclusion that Saia's work "consisted of maintenance and repair services, simply an improvement of existing facilities". *Id.* at 12. Such improvement and replacement of refinery control systems that are essential to the operation of the plant is properly characterized as an integral part of Exxon's usual trade, business, or occupation. We therefore conclude that the district court's findings are not clearly erroneous and that Exxon was the statutory employer of Zuccarello.

### C. *Exxon Cannot Be Estopped From Asserting the Defense of Statutory Employer*

■ The plaintiffs argue that even if Exxon qualifies as Zuccarello's statutory employer, Exxon should be estopped from asserting that status as a defense by virtue of its contract with Saia. Article 2 of the contract provides that for the purpose of the contract and all services to be provided thereunder, Saia "shall be deemed to be, an independent contractor and not the agent or employee of" Exxon. Article 13 requires Saia to indemnify Exxon against claims for personal injuries suffered by Saia employees. The plaintiffs argue that these provisions demonstrate that Exxon had no intention to recognize Saia employees as persons for whom or to whom Exxon was responsible by virtue of the employment relationship. The plaintiffs argue that Exxon should therefore be estopped from taking advantage of the employment relationship by asserting the statutory employment defense.

We reject this argument. First, Exxon cannot by contract abrogate any of its responsibilities under Louisiana workmen's compensation law. If Exxon is found to be the statutory employer of an injured employee, it is liable to pay workmen's compensation benefits, notwithstanding any contractual provision to the contrary. Second, the legislature has provided that workmen's compensation benefits are an *exclusive* remedy, and statutory employers are therefore entitled to immunity from tort suits in those instances in which they are liable for workmen's compensation. Under the scheme set up by the legislature, then, because Exxon is liable for workmen's compensation as the statutory employer of the injured employee, it has a concomitant right to immunity in tort. The test set up by the legislature for entitlement to that right has nothing to do with whether or not the immediate employer of the injured party was an independent contractor. We therefore conclude that Saia's status as an independent contractor is irrelevant to Exxon's right to tort immunity under Louisiana workmen's compensation law.

Moreover, the plaintiffs' argument sweeps too broadly. The statutory employer defense nearly always will arise in cases involving an independent contractor, because otherwise the principal would be the *ordinary* employer of the injured employee, obviating the need for the concept of a "statutory" employer. As we noted recently, "The underlying purpose of [the statutory employer provision] is to ensure that employers do not evade compensation responsibility by contracting out the dangerous parts of their regular work to independent contractors who do not provide compensation protection." *Brown v. Cities Service Oil Co.*, 5 Cir.1984, 733 F.2d 1156, 1160. The plaintiffs' argument would virtually obliterate the statutory employer defense that the legislature created as part of its workmen's compensation scheme. We therefore decline to accept it and hold that Exxon is entitled to assert the statutory employer defense.

### III.

We conclude that the standards the district court applied in deciding whether Exxon was the statutory employer of Zuccarello were equivalent to those set forth in *Lewis.* The court's findings under those standards were not clearly erroneous and

Exxon is not estopped from asserting the status of statutory employer as a defense. The judgment of the district court is therefore AFFIRMED.